IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 16-913

| | |
|---|---|
| FRANCIS X. DE LUCA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE NORTH CAROLINA STATE )<br>BOARD OF ELECTIONS; KIM )<br>WESTBROOK STRACH, in her official )<br>capacity as the Executive Director of the )<br>State Board; and A. GRANT WHITNEY, )<br>RHONDA K. AMOROSO, JOSHUA D. )<br>MALCOLM; JAMES BAKER and MAJA )<br>KRICKER, in their official capacities as )<br>members of the State Board of Elections, )<br>)<br>Defendants. )<br>_____ ) | **COMPLAINT** |

Plaintiff, Francis X. De Luca, by and through undersigned counsel, for his Complaint against the Defendants, alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this action seeking declaratory and injunctive relief because the North Carolina State Board of Elections (the "Board") will certify the results of the 2016 general election and will include in the vote count ballots that were cast by persons whose voter registrations have not been verified as required by law. Specifically, ballots were cast in the general election using the Same-Day Registration process (referred to as "SDR" in this Complaint), but the voter registration applications submitted through the SDR process cannot be completely verified until at least nine days after the Board will certify the election results.

1

2. The Board's certification of the election results using ballots cast through the SDR process violates North Carolina law because ballots will be counted without the voter registrations having been verified. Moreover, the use of these SDR ballots creates a separate class of votes and places non-SDR votes in a separate, unequal category. Use of SDR without fully verifying residence prior to counting SDR votes also creates separate class of registrants, with non-SDR registrants in a separate, unequal category. Plaintiff simply asks that the Court require the Board to withhold certification of the 2016 statewide election results until such time as the mail verification process can run its course for SDR voters as it must for all other voters.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1346, 2201, 2202 and 42 U.S.C. § 1983.

5. This Court has personal jurisdiction over the Defendants.

6. Venue is proper pursuant to 28 U.S.C. § 1391 because, *inter alia*, the events and omissions giving rise to this action are harming Plaintiff in this District.

## PARTIES

7. Plaintiff is a citizen of North Carolina and a resident of Wake County, North Carolina, is registered to vote in Wake County, and cast a ballot in the 2016 general election by one-stop absentee voting.

8. Defendant North Carolina State Board of Elections is charged with supervising and administering the election laws of the State of North Carolina.

9. Defendant Kim Westbrook Strach is the designated chief state election official responsible for ensuring the Board's compliance with the National Voter Registration Act ("NVRA")

10. Defendant A. Grant Whitney, Jr. is the chairman of the North Carolina State Board of Elections and is being sued in his official capacity as a member of the State Board of Elections, which is charged with administering the election laws of the State of North Carolina.

11. Defendant Rhonda K. Amoroso is being sued in her official capacity as a member and secretary of the State Board of Elections, which is charged with administering the election laws of the State of North Carolina.

12. Defendant Joshua D. Malcolm is being sued in his official capacity as a member of the State Board of Elections, which is charged with administering the election laws of the State of North Carolina.

13. Defendant James Baker is being sued in his official capacity as a member of the State Board of Elections, which is charged with administering the election laws of the State of North Carolina.

14. Defendant Maja Kricker is being sued in her official capacity as a member of the State Board of Elections, which is charged with administering the election laws of the State of North Carolina.

## **FACTS**

15. In 2013, the North Carolina General Assembly enacted North Carolina Session Law 2013-381 ("SL 2013-381"). Part of this Session Law repealed N.C. Gen. Stat. § 163-82.6A, which was entitled "In-person registration and voting at one-stop sites" and which established SDR procedures.

16. The Fourth Circuit Court of Appeals held in *N. Carolina State Conference of NAACP v. McCrory*, 831 F.3d 204, 215 (4th Cir. 2016) that the General Assembly's repeal of N.C. Gen. Stat. § 163-82.6A was unconstitutional. The Court therefore remanded the *McCrory*

case to the District Court with instructions to enter an order "enjoining…changes to…same-day registration." *Id.* at 242. The District Court then entered a judgment and injunction in accordance with the Fourth Circuit's decision, stating that ""[t]he elimination of same-day registration contained in Part 16 of Session Law 2013-381 is enjoined, with the provision in effect prior to Session Law 2013-381's enactment to be in full force."

17. As a result of the Fourth Circuit's decision and the District Court's judgment in accordance with that decision, North Carolina utilized the SDR procedures in the 2016 general election.

18. Voting under SDR procedures is available during the early voting period. During that period, a person may cast a ballot using the SDR procedures by appearing at an early voting site, applying to register as a voter, and casting a ballot that same day.

19. In order to vote using SDR procedures, a person must be qualified to register to vote, complete a voter registration form, and provide proof of residence. Acceptable proof of residence includes: (1) a North Carolina driver license; (2) a photo identification from a government agency; (3) a copy of a current utility bill, bank statement, government check, paycheck, or other government document showing the voter's name and address, or (4) a current college/university identification card paired with other evidence of residence.

20. For the 2016 general election, the early voting period began on Thursday, October 27, 2016 and ended on Saturday, November 5, 2016 (the Saturday before Election Day). SDR registration applications and ballots were accepted throughout this period.

21. All applications for voter registration, including those submitted using SDR procedures, must be verified in accordance with N.C. Gen. Stat. § 163-82.7.

22. The verification requirements under N.C. Gen. Stat. § 163-82.7 are as follows:

4

(a) A county board of election must either make an initial determination that an applicant is not qualified to vote at the address that the applicant provided in the application for registration or make a tentative determination that applicant is qualified

(b) The county board of elections then must verify the applicant's address.

(c) To verify an applicant's address, the county board of election must mail a notice to the applicant at the address the applicant provided in the application for registration.

(d) If the Post Office does not return the notice as undeliverable, then the county board of election must register the applicant to vote.

(e) If the Post Office returns the notice as undeliverable, then the county board of election must send a second notice, which must be sent in the same manner as the first notice.

(f) If the Post Office does not return this second notice as undeliverable, then the county board of election must register the applicant to vote.

(g) If the Post Office returns this second notice as undeliverable, then the county board of elections must deny the application to vote.

23. The Board has published guidelines regarding the time periods applicable to the mailings described above. Those guidelines state that a county board of elections should wait at least 15 days from the date that a mailing is postmarked before determining that the Post Office has not returned a mailing as undeliverable. Moreover, the Board expects county boards of election to mail the first notice described above promptly by having the first mailing postmarked the next business day after the application is submitted.

24. Based upon the statutory requirements of N.C. Gen. Stat. § 163-82.7 and the guidelines imposed by the Board, verification of an application to vote takes up 30 days, assuming that a county board of elections promptly mails the first notice. If a county board of elections does not do so, the time period for completing verification would be extended.

25. Notwithstanding the requirements of the law, applications submitted through the SDR process are not verified before the ballots cast by those applicants are counted. In the 2016 general election, persons submitted applications through the SDR process as late as Saturday, November 5, 2016. This means that even if every county board of elections mailed the required notice on the next business day—Monday, November 7, 2016—all applications accepting through the SDR process could not be verified until Thursday, December 7, 2016, at the earliest.

26. In contrast, the county boards of election will complete their vote counts by November 18, 2016, only 13 days after the last voter applications were accepted, and the State Board will certify the election results on November 29, 2016, well before the verification period ends.

27. Indeed, the 30-day period for verification contemplated by N.C. Gen. Stat. § 163-82.7 and the Board means that the majority of ballots cast by SDR in the 2016 general election will not be subject to the full verification process prior to the Board's certification of the election results on November 29, 2016.

28. Further complicating this problem is the failure by certain county boards of election to mail the first notice required by N.C. Gen. Stat. § 163-82.7 promptly.

29. The Board's certification of the election results before the completion of the verification process means that ballots from unverified registrants—and therefore invalid ballots—will be counted.

30. Moreover, reliable data show that the problem of unverified registrants is significant. There exists a higher rate of SDR applicants failing the mail verification process as compared to the ordinary registration process. A 2015 study by the Board found that the failure rate for SDR applicants in the 2012 general election was 2.44% as compared to a rate of 0.34% for non-SDR registrants. This report concluded that "[t]he purpose of mail verification is to prevent ineligible applicants from casting ballots. The additional analysis reflected in this report demonstrates that mail verification requires time to complete to ensure this gatekeeping function and that the traditional period of registration better ensures that persons casting ballots in primary and general elections are eligible to vote in the jurisdictions they are registered to vote."

31. Meanwhile, the Fourth Circuit in the *McCrory* decision noted the "real" concerns that arise from the administrative burdens imposed by attempting to verify addresses of registrants who submit applications at the very end of the early voting period. *McCrory*, 831 F.3d at 237. The Court also cited evidence in the case that SDR registrants passed the mail verification process at a 97% rate. *Id.* This means, of course, that a full 3% of SDR applicants failed mail verification.

32. More than 90,000 SDR ballots were cast in the 2016 general election. This means that more than 3,000 SDR invalid ballots will likely be included in the Board's certification of election results on November 29, 2016. Considering the narrow margins in certain statewide races indicated by the unofficial results, the inclusion of invalid ballots could mean the difference between one candidate winning over another.

### FIRST CAUSE OF ACTION
### (Violation of 42 U.S.C. § 1973gg-6 of the NVRA)

33. Paragraphs 1 through 32 are realleged and incorporated herein by reference.

34. The Defendants are required to conduct a program that "makes a reasonable effort to remove the names of ineligible voters from the official list of eligible voters by reason of a change in the residence of the registrant" pursuant to 42 U.S.C. § 1973gg-6(a)(4)(B) of the NVRA.

35. The Defendants are required to remove names from the voting rolls if a registrant has failed to properly respond to a notice mailed to the registrant's address. The purpose of this requirement is to ensure that the votes of ineligible voters are not counted and do not thereby dilute the votes of eligible voters.

36. The Defendants' failure to adopt a program that reasonably removes ineligible voters from the voting rolls frustrates, impedes, and harms the Plaintiff's voting rights.

37. By utilizing a program supposedly designed to remove the names of ineligible voters from the voting rolls that actually allows ballots cast by persons who submitted registration applications through the SDR process to be counted even though those applications could not be verified, the Defendants have failed to employ a reasonable effort to remove the names of ineligible voters from the voting rolls, all in violation of 42 U.S.C. § 1973gg-6(a)(4)(B).

38. Defendants' conduct in allowing votes to be counted that were cast by persons whose voter registrations have not been properly verified as required by law violates the one person, one vote doctrine and disenfranchises and dilutes the voting rights of Plaintiff.

39. Given the impending deadlines and the fact that these violations occurred too close in time to the election, Plaintiff was unable to timely give notice to the Defendants of the potential violation, and such notice should therefore be excused.

40. Plaintiff will continue to be injured by Defendants' violations of 42 U.S.C. § 1973gg-6(a)(4)(B) because confidence in the legitimacy of elections in North Carolina will be undermined and his right to vote will be burdened and diluted unless Defendants are enjoined from continuing to violate the law.

41. Plaintiff has no adequate remedy at law.

## SECOND CAUSE OF ACTION
### (Violation of 42 U.S.C. § 1983)

42. Paragraphs 1 through 39 are realleged and incorporated herein by reference.

43. The Defendants have deprived and will continue to deprive Plaintiff of his right to equal protection of the laws guaranteed by the Fourteenth Amendment by counting and certifying the votes of SDR voters whose registration and qualifications have not yet been verified, which unlawfully burdens and dilutes Plaintiff's vote.

44. Defendants' conduct in allowing votes to be counted that were cast by persons whose voter registrations have not been properly verified as required by law violates the one person, one vote doctrine and disenfranchises and dilutes the voting rights of Plaintiff.

45. Plaintiff will continue to be injured by Defendants' conduct unless and until Defendants are enjoined from continuing to violate the law.

46. Plaintiff is entitled to injunctive relief that requires the Board to delay the counting of ballots and the certification of election results until all SDR ballots can be properly and completely verified.

47. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter an order:

9

1. Declaring that Defendants are in violation of 42 U.S.C. § 1973gg-6 and 42 U.S.C. § 1983;

2. Issuing a temporary restraining order, a preliminary injunction, and a permanent injunction that orders the Defendants not to include any SDR ballots in the final vote count until the mail verification process under N.C. Gen. Stat. § 163-82.7 is completed for all SDR ballots.

3. Issuing a temporary restraining order, a preliminary injunction, and a permanent injunction that orders the Defendants not to include any SDR ballots in the final vote count that failed the mail verification process under N.C. Gen. Stat. § 163-82.7.

4. Award Plaintiff his attorney fees and costs against the State of North Carolina pursuant to 42 U.S.C. § 1988, and other applicable law.

5. Grant such other and further relief, in law and equity, as the Court deems just and proper.

This the 21st day of November, 2016.

BOWERS LAW OFFICE LLC

By: /s/ Karl S. Bowers, Jr.
Karl S. Bowers, Jr.*
Federal Bar #7716
P.O. Box 50549
Columbia, SC 29250
Telephone: (803) 260-4124
Fax: (803) 250-3985
E-mail: butch@butchbowers.com
*appearing pursuant to Local Rule 83.1(d)

By: /s/ Joshua Brian Howard
Joshua Brian Howard
State Bar No. 26902
Gammon, Howard & Zeszotarski PLLC

115 ½ West Morgan Street
Raleigh, NC  27601
(919) 521-5878
Fax:  (919) 882-1898
jhoward@ghz-law.com


*Attorneys for Plaintiff Francis De Luca*