IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| FRANCIS X. DELUCA,<br><br>                    Plaintiff,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS; KIM WESTBROOK STRACH, in her official capacity as Executive Director of the State Board; and A. GRANT WHITNEY, RHONDA K. AMOROSO, JOSHUA D. MALCOLM, JAMES BAKER, and MAJA KRICKER, in their official capacities as members of the State Board of Elections,<br><br>                    Defendants. | No. 5:16-cv-913 |

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS

Proposed Defendant-Intervenors League of Women Voters of North Carolina, North Carolina A. Philip Randolph Institute, Common Cause North Carolina, Kay Brandon, Sara Stohler, Hugh Stohler, Anthony Mikhail Lobo, Anna Jaquays, and Michael T. Kuykendall seek to protect their interests and to ensure that no voter in North Carolina loses the right to register using same-day registration and have his or her ballot counted as a result of Plaintiff's challenge. No such court action is appropriate given the clear ruling of the U.S. Court of Appeals for the Fourth Circuit in *League of Women Voters v. North Carolina* ("*LWV*"), 831 F.3d 204, 237 (4th Cir. 2016), which upheld North Carolina's same-day registration process, noting with approval that Defendant State Board of Elections "had reported that same-day registration 'was a success'" and "'does not result in the registration of voters who are any less qualified or eligible to vote than' traditional registrants," and that "'undeliverable verification mailings were not

caused by the nature of same day registration.'" Plaintiff's challenge is no more than a collateral attack on the Fourth Circuit's judgment. Further, the court action Plaintiff requests is not mandated by the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501-20511, a federal statute designed to make it easier for voters to become registered to vote at their current addresses. *See* § 20501(b) (setting forth purposes of the NVRA).

Plaintiff's requested relief would result in the disenfranchisement of potentially hundreds or thousands of eligible North Carolina voters, including proposed Defendant-Intervenors Lobo, Jaquays, and Kuykendall, along with, upon information and belief, members of at least some of the organizational proposed Defendant-Intervenors. The relief Plaintiff seeks would also violate the Equal Protection Clause of the Fourteenth Amendment by counting the votes of registrants who used regular registration and voted before failing mail verification, yet discounting the votes of those who used same-day registration. In order to protect their legally-cognizable interests, Proposed Defendant-Intervenors therefore respectfully move to intervene in this matter.

## STATEMENT OF THE CASE

On July 29, 2016, the Fourth Circuit ordered Defendant State Board of Elections and others to reinstate North Carolina's same-day registration process, which permits voters who present at the polls during the early voting period and are not on the voter rolls to fill out a voter registration form and cast a ballot in the same trip. *LWV*, 831 F.3d at 217 (three consolidated Voting Rights Act and equal protection challenges to North Carolina's Voter Information Verification Act of 2013). The Fourth Circuit considered in its decision that North Carolina uses a mail verification process to determine that same-day registrants are qualified voters and to finalize their voter registrations. *See id.* As part of this process, the county board of elections makes an initial determination on whether the voter is qualified and then, for all voters initially

2

Case 5:16-cv-00913-D   Document 12   Filed 11/23/16   Page 2 of 16

determined to be qualified, sends a *nonforwardable* mailing to the address listed on the voter registration form. N.C. Gen. Stat. § 163-82.7(c). North Carolina uses the same mail verification process for all registrants, regular or same-day, but with same-day registrations, that first mailing is required to be mailed out within forty-eight hours of the registration. 2007 N.C. Sess. Laws 253, § 1. If the first mailing is not returned as undeliverable, the county board completes the voter's registration and the voter is a verified voter. § 163-82.7(d). If the first mailing is returned as undeliverable, a second notice is sent via nonforwardable mail. § 163-82.7(e). If the Postal Service returns as undeliverable the second notice sent by nonforwardable mail, the county board of election shall deny the voter registration application. § 163-82.7(d). However, if a voter votes before the verification process is complete, regardless of whether the voter uses regular registration or same-day registration, the voter is treated as registered for purposes of the instant election, but the statutory list maintenance process is triggered, and the county board of elections sends a *forwardable* confirmation-of-address notice to the address listed on the voter registration form, and if the voter fails to respond confirming his or her address, the voter is removed from the voter rolls. §§ 163-82.7(g)(1), (3); § 163-82.14(d)(2).

Plaintiff filed the instant equal protection and NVRA challenge to North Carolina's same-day registration process on November 21, 2016, nearly four months after the Fourth Circuit's ruling reinstating those processes as outlined above and thirteen days after the November 8, 2016 general election was conducted. *See generally* Compl. Plaintiff asks this Court to delay certifying the results of the November 2016 general election until county boards of election have sent verification mailings to all voters who used same-day registration and waited fifteen days to determine whether those mailings will be returned as undeliverable. *See* Compl. 9. For any returned mailings, Plaintiff then asks that the Court stay certification of the

3

election until a second verification mailing has been sent by *nonforwardable* mail to the same address as the first, and until a second fifteen-day waiting period has elapsed. *See* Compl. 9. For any voters whose first and second mailings to the same address are returned as undeliverable after thirty days, Plaintiff asks this Court to order county boards of election to reject their ballots. Compl. 10. Plaintiff additionally asks, even for those same-day registrants for whom mailings are not returned as undeliverable and whose registrations are deemed complete under the statutory process, that their ballots not be counted until the thirty-day period has elapsed. Compl. 10.

On November 23, 2016, Plaintiff additionally filed a Motion for Preliminary Injunction. Dkt. 9. Defendants have not yet responded to Plaintiff's Complaint or Motion for Preliminary Injunction. Proposed Defendant-Intervenors now move to intervene in this action, seeking to dismiss the complaint and respond in opposition to Plaintiff's Motion for Preliminary Injunction.

## ARGUMENT

**I.    The Court should grant intervention of right because the Motion is timely, proposed Defendant-Intervenors have a legally-cognizable interest in the case that will be impaired if Plaintiff's requested relief is granted, and existing Defendants do not adequately protect that interest.**

Under Federal Rule of Civil Procedure 24(a)(2), proposed Defendant-Intervenors are entitled to intervene in this action as of right. In the Fourth Circuit, a party seeking to intervene as of right under Rule 24(a)(2) must meet four requirements:

> (1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation.

*Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). If a party seeking to intervene meets all four requirements, it is an abuse of discretion to deny the motion. *See, e.g., Teague v. Bakker*, 931 F.2d 259, 260–62 (4th Cir. 1991).

Proposed Defendant-Intervenors easily satisfy Rule 24(a)(2)'s requirements for intervention as of right under *Moore* because (1) proposed Defendant-Intervenors' motion to intervene is timely in that the case is still in the pleading stage, having just been initiated two days ago, and no discovery has taken place; (2) proposed Defendant-Intervenors have strong interests in ensuring that the Fourth Circuit's decision in *LWV* granting them relief is upheld and in securing North Carolina voters' right to continue to effectively use same-day registration as upheld by the Fourth Circuit, and three proposed Defendant-Intervenors would be disenfranchised if Plaintiff obtained the sought-after relief; (3) any order concerning Defendants' same-day registration processes and the counting of votes by same-day registrants will necessarily impact those interests, meaning that proposed Defendant-Intervenors' ability to protect those interests will be impaired absent intervention; and (4) as a public agency subject to numerous competing obligations, and particularly as an agency that vigorously defended the repeal of same-day registration ruled unconstitutional by the Fourth Circuit, Defendants have interests that do not necessarily align with those of Proposed Defendant-Intervenors and therefore cannot adequately represent Proposed Defendant-Intervenors' interests.

    A.    <u>The motion to intervene is timely.</u>

In assessing the timeliness of a motion to intervene, courts in this circuit consider:

> [F]irst, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion.

*Alt v. Env. Protection Agency*, 758 F.3d 588, 591 (4th Cir. 2014); *see also Diagnostic Devices, Inc. v. Taidoc Tech. Corp.*, 257 F.R.D. 96, 98 (W.D.N.C. 2009). These factors compel a finding that proposed Defendant-Intervenors' Motion is timely.

As the Fourth Circuit has recognized, the "[m]ere passage of time is but one factor to be considered in light of all the circumstances." *Spring Const. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980). Rather, "[t]he most important consideration [in the timeliness inquiry] is whether the delay has prejudiced the other parties." *Id.*

In the present case, Plaintiff filed his Complaint just two days ago, on November 21, 2016. Dkt. 1. Defendants have not yet responded to the Complaint by filing an answer or a dispositive motion. No discovery has been contemplated, scheduled, or conducted. Given that Defendants' initial response to the Complaint is still pending, proposed Defendant-Intervenors would be able to abide by the current schedule under the Rules, or even an expedited schedule ordered by this Court given the impending deadlines associated with certification of results in the current election, and participate in the present case without causing any delay or prejudicing either party.

> B. Proposed Defendant-Intervenors have a legally-protectable interest in this case that will be impaired if the Court grants Plaintiff's requested relief.

Proposed Defendant-Intervenors Anthony Mikhail Lobo, Anna Jacquays, and Michael T. Kuykendall are voters who used same-day registration to register and vote in Watauga County in the November 2016 general election. Due to no fault of their own, they failed the mail verification process (that is, had at least one mailing returned as undeliverable), but they are eligible voters. Should Plaintiff obtain the relief he seeks, these three voters would have their votes discounted and be deprived of their fundamental right to vote, in direct violation of their Fourteenth Amendment rights.

Proposed Defendant-Intervenor Anthony Mikhail Lobo is a 20-year-old junior at Appalachian State University in Boone, North Carolina. He registered to vote and voted for the first time in his life on October 21, 2016, during the early voting period of this year's general election. Mr. Lobo lived in a dorm for his first two years at the university and moved to an apartment building off-campus for his junior year. He thought he may have been registered to vote, but when he went to early voting, he found out he was not. He used same-day registration to register and vote. As proof of residency, he provided official documentation from Appalachian State University, a public university, that verified his off-campus residence. He handed that documentation to the poll worker, who entered that information into Mr. Lobo's voter registration form. Unbeknownst to Mr. Lobo, the poll worker apparently left off Mr. Lobo's apartment number in completing the form. Upon information and belief, the verification mailing sent to Mr. Lobo after he cast his ballot was returned by the U.S. Postal Service as undeliverable because it did not contain an apartment number. Mr. Lobo was subsequently challenged by another voter in Watauga County, and after Mr. Lobo provided an affidavit, the Watauga County Board of Elections dismissed the challenge against him. But because Mr. Lobo failed the mail verification process, Plaintiff's requested relief would require that his vote be discounted, and he would be disenfranchised.

Proposed Defendant-Intervenor Anna Jaquays is a 23-year-old resident of Blowing Rock, North Carolina. She registered in Watauga County when she turned 18, but later registered in Chatham County when she lived there attending school. She moved back to Watauga County after school, and has lived at her residence in Blowing Rock for the last two and a half years. She knew that she was not registered to vote in Watauga County for the 2016 general election, but researched same-day registration on the internet and decided to utilize that option to vote in

Watauga County. She voted on the first day of early voting in Watauga County, and used her driver's license to prove her residency and use same-day registration. Ms. Jaquays does not receive mail from the U.S. Postal Service at her residential address (although she does receive deliveries from UPS and other commercial companies). For mail delivered through the U.S. Postal Service, she has a P.O. Box. It was not clear to her upon using same-day registration that she needed to provide her P.O. Box number, as she was unaware of the mail verification process. Upon information and belief, the verification mailings sent to her residential address were returned as undeliverable because the U.S. Postal Service does not deliver to Ms. Jaquays' home. She was subsequently challenged by another voter in Watauga County, and after she provided an affidavit, the Watauga County Board of Elections dismissed the challenge against her. But because Ms. Jaquays failed the mail verification process, Plaintiff's requested relief would require that her vote be discounted, and she would be disenfranchised.

Proposed Defendant-Intervenor Michael T. Kuykendall is a junior at Appalachian State University in Boone and lives on campus, in the Mountaineer dormitory. This was Mr. Kuykendall's first time voting. He moved to Watauga County approximately two and a half years ago to attend Appalachian State University, and before this general election, he called the county board of elections office to confirm that he was eligible to vote in the county where he resided for school. The county elections staff confirmed that Mr. Kuykendall was eligible and explained to him how he could use same-day registration. Mr. Kuykendall and his girlfriend went to vote on the first day of early voting. The poll worker assisting Mr. Kuykendall at the polling place appeared to have difficulty understanding how to register students living on-campus, and had to ask her superior for assistance. As proof of residence, Mr. Kuykendall provided official university documentation that established his residency on campus. The

university sent that documentation to students specifically for them to use in the process of registering to vote. The poll worker filled out Mr. Kuykendall's registration paperwork using the documentation Mr. Kuykendall handed her. No one ever inquired about his mailing address and whether it was different from his residential address—if asked, Mr. Kuykendall would have provided his ASU Box number, where he receives mail. Upon information and belief, the verification mailing sent to Mr. Kuykendall's residential dorm address (as opposed to his ASU mailbox) bounced back as undeliverable. Mr. Kuykendall was subsequently challenged by another voter in Watauga County, and after Mr. Kuykendall provided an affidavit, the Watauga County Board of Elections dismissed the challenge against him. But because Mr. Kuykendall failed the mail verification process, Plaintiff's requested relief would require that his vote be discounted, and he would be disenfranchised.

The rest of the proposed Defendant-Intervenors are plaintiffs in *League of Women Voters of North Carolina v. North Carolina*, No. 1:13-cv-660, 2016 U.S. Dist. LEXIS 55712 (M.D.N.C. Apr. 25, 2016), *rev'd*, 831 F.3d 204 (4th Cir. 2016). The organizational proposed Defendant-Intervenors are nonprofit, nonpartisan groups that actively work to increase voter participation in North Carolina, and whose interests and resources would have been directly harmed by the elimination of same-day registration called for under North Carolina's Voter Information Verification Act of 2013, a provision of the Act the Fourth Circuit found to be intentionally discriminatory in violation of the Fourteenth Amendment and Voting Rights Act of 1965. *LWV*, 831 F.3d at 237. The individual proposed Defendant-Intervenors from the *LWV* case are registered voters in North Carolina who would have been similarly directly harmed by the elimination or abridgement of same-day registration opportunities as called for under the Voter Information Verification Act. As part of their evidence in *LWV*, proposed Defendant-Intervenors

demonstrated that, standing alone, mailings returned by the U.S. Postal Service as undeliverable are not a reliable indicator of whether a voter does or does not live at the address listed on his or her voter registration application. *See, e.g., League of Women Voters of N.C.*, 2016 U.S. Dist LEXIS at *452 (verification mailings to Army sergeant living on military base were returned as undeliverable despite fact that sergeant lived at address listed on his voter registration form).

Just as proposed Defendant-Intervenors were harmed by the abridgement of same-day registration opportunities in *LWV*, these organizations and individuals would be directly harmed if the Court were to grant the relief Plaintiff seeks in this action, and that requested relief would undermine their hard-fought success in *LWV*. Plaintiff's requested relief—to delay counting or reject valid ballots cast by qualified voters who used same-day registration in 2016 simply based on a returned mailing—will harm proposed Defendant-Intervenors as voters and in their ability to carry out their work to increase voter participation in North Carolina. Specifically, were same-day registration opportunities to no longer exist as a practical failsafe for voters who have changed their addresses, are unable to register before the Election Day registration deadline, or who have been removed from or do not appear on the voter rolls as a result of administrative failures on the part of the State, proposed Defendant-Intervenors and many of the potential voters they work with would be disenfranchised. If the Court were to grant the relief Plaintiff seeks and potentially order the discounting validly cast ballots where qualified voters used same-day registration, those same-day registrants, including those served by proposed Defendant-Intervenors, would have no legal recourse to have their valid votes restored and counted.

Proposed Defendant-Intervenors therefore have a strong interest in opposing the aggressive, overbroad, and unlawful relief sought by Plaintiff. Given their work to expand voter participation and the relief they sought and obtained in the Fourth Circuit to uphold North

Carolina's same-day registration process, Proposed Defendant-Intervenors legally-cognizable interest in this litigation.

Moreover, Proposed Defendant-Intervenors have an interest in ensuring that the votes cast by same-day registrants are treated the same as votes cast by regular registrants. The threat to that interest is particularly grave because the requested relief could itself violate the Fourteenth Amendment and the NVRA. *See* 52 U.S.C. § 20507(b)(1) ("Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965."). Plaintiff's requested relief would disenfranchise proposed Defendant-Intervenors Lobo, Jaquays, and Kuykendall, but would not disenfranchise regular registrants who voted before later having their verification mailings returned as undeliverable.

Finally, any court-ordered action that would result in eligible voters' registrations and ballots being put at risk by unnecessarily and improperly changing same-day registration, mail verification, and election certification procedures would directly harm Proposed Defendant-Intervenors' interests as individuals and organizations who devote considerable time and energy to increasing voter participation, including through use of same-day registration, and promoting a robust and inclusive democracy where all qualified voters are able to cast a ballot that counts.

C. The State Board of Elections, its director, and its individual members may not adequately protect the interests of proposed Defendant-Intervenors.

In determining whether existing parties "adequately represent" the interests of proposed Defendant-Intervenors, Rule 24(a)(2)'s "third requirement [is satisfied] if it is shown that representation of its interest 'may be' inadequate." *In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

"[T]he burden of making [such a] showing should be treated as minimal." *Trbovich*, 404 U.S. at 538 n.10.

Plaintiff and proposed Defendant-Intervenors clearly have different views about the interpretation and application of the Fourth Circuit's decision in *LWV* and the NVRA. To the extent Plaintiff has standing to bring this action, proposed Defendant-Intervenors have a similar interest in ensuring that the Fourth Circuit's decision in *LWV* is applied correctly to prevent discriminatory and disparate treatment of same-day registrants and regular registrants, and to ensure that no eligible North Carolina voter is disenfranchised. The relief Plaintiff seeks would inevitably result in the disenfranchisement of eligible voters.

Defendants' interests and interpretation of the Fourth Circuit's decision in *LWV* and the NVRA also may not be aligned with those of proposed Defendant-Intervenors. Proposed Defendant-Intervenors' proposed Motion to Dismiss, Exs. 2-3 to Mot. to Intervene, argues that this action should be dismissed based on Plaintiff's failure to state a claim under the substantive law, an argument that goes to the core of proposed Defendant-Intervenors' interests as successful litigants in *LWV* and one the Defendants may not fully address in their response as a ministerial agency charged with administering the law. The State Board of Elections is a public body with limited resources, broad responsibilities, and distinct governmental interests—including managing an office, stewarding limited public resources, and running elections—all of which may affect its approach in defense of this litigation. Moreover, Defendant State Board of Elections vigorously defended the repeal of same-day registration in the *LWV* litigation, further demonstrating the non-alignment of Defendants' and proposed Defendant-Intervenors' interests with respect to same-day registration.

Finally, any settlement or judgment entered by this court would impact proposed Defendant-Intervenors' legal interests. Should the Court fail to allow proposed Defendant-Intervenors the ability to participate in settlement discussions or trial, the outcome could effectively determine the policies and practices that would concretely impact proposed Defendant-Intervenors without their involvement and input. Proposed Defendant-Intervenors would be particularly harmed were the Court to deny intervention given that the NVRA specifically provides private aggrieved parties a right of action. 52 U.S.C. § 20510(b). However, if intervention is denied, the private right of action authorizing a collateral suit would not offer proposed Defendant-Intervenors meaningful relief. If Plaintiff obtains relief or a court-approved settlement agreement that harms proposed Defendant-Intervenors' interests, the *stare decisis* effect of this Court's action may thwart proposed Defendant-Intervenors in challenging the resolution of this case. This practical disadvantage constitutes the prejudice contemplated by Rule 24(a) and supports intervention as of right. *See, e.g., Teague*, 931 F.2d at 260–61 (allowing intervention when an "intervenor's interest [wa]s contingent on the outcome of [the] litigation"). Thus, the interests of justice and judicial efficiency mandate that proposed Defendant-Intervenors be made a party in the current proceeding and any negotiated resolution, so these issues may be considered and litigated simultaneously.

As proposed Defendant-Intervenors have satisfied all the requirements for intervention as of right, their Motion to Intervene should be granted.

**III.** **In the alternative, the Court should grant permissive intervention because proposed Defendant-Intervenors' defenses pose common questions of law and fact with the main action.**

In the event that the Court finds the requirements for intervention as of right have not been satisfied, proposed Defendant-Intervenors request that this Court grant them permissive

intervention under Federal Rule of Civil Procedure 24(b). Permissive intervention under Rule 24(b) may be granted if a would-be intervenor establishes that the application to intervene was timely and "alleges . . . a claim or defense that shares . . . a common question of law or fact" with the main action. *Diagnostic Devices, Inc. v. Taidoc Tech. Corp.*, 257 F.R.D. 96, 100 (W.D.N.C. 2009) (referencing Fed. R. Civ. P. 24(b)(1)(B)).

As discussed above, proposed Defendant-Intervenors' Motion to Intervene is timely, and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3) (noting that with permissive intervention courts must also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights"). Additionally, Intervenor-Defendants' defense and the main action both concern the identical legal question—whether the Defendant's same-day registration procedures comply with the NVRA and the Fourth Circuit's decision in *LWV*. In their Memorandum in Support of Motion to Dismiss, Ex. 3 to Mot. to Intervene, proposed Defendant-Intervenors ask the Court to deny Plaintiff's requested relief because such relief is inappropriate in light of the *LWV,* is not required by the NVRA (and, indeed, may violate both the Fourth Circuit's decision and the federal statute), and violate the Equal Protection Clause by treating the votes cast by same-day registrants differently from regular registrants. Proposed Defendant-Intervenors' request for dismissal of this action thus presents the same issues of law and fact that are presented in the main action.

## CONCLUSION

The Court should grant intervention of right or, alternatively, permissive intervention. Respectfully submitted this 23rd day of November.

*/s/ Allison J. Riggs*_____
Anita S. Earls (N.C. Bar No. 15597)

Allison J. Riggs (N.C. Bar No. 40028)
Emily E. Seawell (N.C. Bar No. 20507)
Southern Coalition for Social Justice
1415 W. Highway 54, Suite 101
Durham, NC  27707
Phone: 919-323-3380
Facsimile: 919-323-3942

## CERTIFICATE OF SERVICE

I certify that on this day I filed the foregoing **Memorandum in Support of Motion to Intervene as Defendants** with the clerk's office via the CM/ECF system, which will send notification of filing to the following counsel of record:

Karl S. Bowers, Jr.
P.O. Box 50549
Columbia, SC  29250
Telephone: 803-260-4124
butch@butchbowers.com

Joshua Brian Howard
Gammon, Howard & Zeszotarski PLLC
115 ½ West Morgan Street
Raleigh, NC  27601
Telephone: 919-521-5878
jhoward@ghz-law.com

Alexander M. Peters
James Bernier
Office of the Attorney General
P.O. Box 629
Raleigh, NC  27602
apeters@ncdoj.gov
jbernier@ncdoj.gov

Joshua Lawson
General Counsel
North Carolina State Board of Elections
441 N. Harrington St.
Raleigh, NC  27603
Telephone: 919-715-9194
joshua.lawson@ncsbe.gov


This the 23rd day of November, 2016.

                                               /s/Allison J. Riggs
                                               Allison J. Riggs

                                               *Counsel for Proposed*
                                               *Defendant-Intervenors*