# Exhibit 2

# DECLARATION OF REV. DR. WILLIAM J. BARBER II

Rev. Dr. William J. Barber II hereby declares:

1. I am the elected President of the North Carolina State Conference of the National Association for the Advancement of Colored People ("NC NAACP"), a position I have held since 2005. I am a U.S. citizen and a resident of the state of North Carolina. I have personal knowledge of the matters set forth in this declaration, except for those matters identified as based on information and belief, and if called upon to do so, could and would competently testify thereto.

2. As President of NC NAACP, my responsibilities include presiding at all meetings of the NC NAACP State Conference, acting as Chair of the Executive Committee, implementing appointive powers over non-elected offices of the Conference, and exercising all general executive authority on behalf of the NC NAACP, subject to ratification by the Executive Committee, including serving as spokesperson, and directing programmatic advocacy, legal, and operational priorities of the Conference.

3. Like our branch unit leadership across the state of North Carolina, my service as President is in a volunteer capacity. The repayment for our labor is equity and justice for all.

## Overview of the NC NAACP's Mission and Voting Rights Work

4. The National Association for the Advancement of Colored People ("NAACP") was founded in 1909 and is the nation's oldest, largest, and most widely recognized grassroots-based non-profit civil rights organization. The NAACP's mission is to ensure the rights of all persons to political, educational, social, and economic equality, and to eliminate racial discrimination.

5. The NC NAACP was established in 1938 and today has over 20,000 members – the largest number of members of any NAACP conference in the South and the second largest in the country. The NC NAACP has more than 90 active branches in urban centers and rural communities throughout the State of North Carolina, including members in every county formerly covered by the pre-clearance formula under Section 4(b) of the federal Voting Rights Act. The NC NAACP is based in Durham, North Carolina.

6. Since its founding, one of the NC NAACP's enduring priorities has been to protect and expand hard-won voting rights. The organization has historically played a prominent role in promoting the right to vote and civic engagement generally throughout North Carolina, including by fighting for the voting rights of African Americans and people of color.

7. For example, in the past decade, the NC NAACP has engaged in voter registration drives, efforts to encourage civic engagement by youth, and Get Out the Vote ("GOTV") drives. The NC NAACP engages in voter empowerment work through all-volunteer Political Action Chairs and Committees active at both the state and local levels. GOTV efforts have included large-scale "Souls to the Polls" campaigns on Sundays after church, Million Voter Marches, and non-partisan civic engagement trainings, events, and assemblies across the State. Souls to the Polls and other events occur during Early Voting and persons who need to register or update their registration are encouraged to participate and use Same Day Registration. These campaigns consist of voter engagement and mobilization efforts led by NC NAACP volunteers to assist voters in overcoming barriers to the ballot, publicizing important educational information about the rights and responsibilities of voters, and assembling collectively to exercise and advocate for the full and fair right to participate in the democratic process.

2

8. The NC NAACP has also played a key role in securing the successful passage of significant voting modernization reforms that have expanded access to and provided safeguards for voting rights to African Americans and other racial minorities throughout the State. Such reforms include the implementation of early voting, the counting of provisional ballots cast out-of-precinct, same-day registration, and pre-registration for 16- and 17-year-old, which allows for early involvement by youth in the state registration system. These reforms, enacted between 1999 and 2009, have had a tremendous impact in expanding voter participation rates, increasing the participation of eligible African American voters in North Carolina from 2000 to 2012 by more than 20 percent.

9. With respect to same-day registration specifically, when in 2006, the NC NAACP convened a network of organizations called the Historic Thousands on Jones Street People's Assembly Coalition ("HKonJ"), the Coalition's initial agenda, among other priorities, called for promoting the expansion of voting rights, including the enactment of same-day registration. Subsequently, in 2007, the NC NAACP played a prominent role in promoting the successful passage of same-day registration legislation. At the time, the NC NAACP heralded that legislation as one of the organization's most important victories in coalition with our HKonJ partners in support of a more racially just state.

10. In 2011, the NC NAACP provided training for NAACP youth and adult leaders in our *Million Voters March* mass non-partisan voter registration and Get Out the Vote campaigns. In 2012, we held GOTV tours in 27 communities that included college campuses and NC's "Black Belt." Our primary focus was to promote not only early voting, but also one-stop same-day registration. This work subsequently resulted in both an increase in African American registration and an increase in African American early voting compared to 2008.

11. In 2013, the North Carolina legislature passed House Bill 589 ("H.B. 589"), a new "monstor voter suppression bill" that included stricter requirements for voter identification, made significant cuts to early voting, limited weekend or Sunday voting, and – significantly for this case – abolished same-day registration. The NC NAACP filed suit to challenge H.B. 589 because we believed that if the legislation was allowed to stand, it would have an irreparable impact on the right to vote of African Americans in North Carolina. History proves that the right to vote is like a day in one's life – once taken, it cannot be retroactively given back. On July 29, 2016, the Fourth Circuit Court of Appeals struck down H.B. 589 and ordered the district court to enjoin implementation of the photo ID requirement and changes to early voting, out-of-precent voting, preregistration, *and same-day registration*. The Fourth Circuit concluded that the legislature enacted these provisions with "discriminatory intent" and "target[ed] African-Americans with almost surgical precision . . . ." *North Carolina State Conference of NAACP v. McCrory*, 831 F.3d 204, 214 (4th Cir. 2016).

12. In addition, in the 2016 election cycle, the NC NAACP engaged in an unprecedented *Our Time! Our Vote!* Registration and Get-Out-The-Vote Campaign. This statewide campaign included voter education, registration, mobilization and protection efforts. This campaign included voter registration in the lead up to the registration deadline (prior to the start of early voting on October 20th), a robust rides-to-the polls program at the county level, as well as a Moral Marches to the Polls and rallies in over 50 locations in the state to encourage North Carolinians to participate in their own futures by casting a ballot this election season. The marches and rallies occurred during Early Voting and participants were encouraged to use same-day registration as needed. The NC NAACP also provided voter protection support, including support for voters seeking to access same-day registration, and received reports from local

4

branches, individual members, coalition partners and individual voters about, for example, concerns involving voting access, intimidation, misinformation, and other impediments to the right to vote across the state.

### Prior Efforts to Purge Voters Based on Non-deliverable Mail

13. In October 2016, the NC NAACP learned of a campaign to remove voters from the voter rolls in Moore, Beaufort, and Cumberland Counties. A small number of private citizens targeted thousands of voters by mailing them correspondence and, when that correspondence came back undeliverable, submitting the correspondence to the county boards of election as evidence seeking to have these voters purged from the state's voter rolls prior to the election. The challenges disproportionately targeted African-American voters.

14. For example, I received information from an individual active with the Beaufort County branch of the NC NAACP that a 100-year-old African-American woman had been wrongfully challenged in Belhaven, North Carolina, and was in need of immediate assistance. At that time, our investigation into the matter confirmed that Ms. Grace Bell Hardison, a 100-year-old African American resident of Beaufort County, had voted in Beaufort since at least 1999, and voted in person at the polls nearly every year for the last 12 years. Through her family, the NC NAACP learned that if Ms. Hardison wanted to vote this year, she would be required to attend a hearing on October 24, 2016, in order to defend her registration status, or find a family member who could attend the hearing and tender on her behalf an affidavit attesting to her eligibility to vote. It was ultimately acknowledged that the correspondence relied on to remove her from the voting rolls had been sent to the wrong address.

15. Others who were among the active voters challenged on the basis of returned mail in Beaufort County include Mary Harris Butcher, a 75-year-old African American resident of

Beaufort County who has voted in the County since 1994, including as recently as the March 2016 primary election; and Sharon Woods, a 42-year-old African American resident of Beaufort County who has voted in the county 15 times since 2001, including most recently when she cast her ballot in person in the 2016 primary. Both were properly registered and should not have been purged from the voter rolls.

16. When the NC NAACP learned of the attempted purging of voter rolls based on undeliverable correspondence, we immediately undertook a preliminary investigation including interviews, reviews of publicly available information, and requests for further information from individuals with first-hand knowledge of the challenges in Moore and Beaufort. On Monday, October 17, 2016, I sent a letter to the North Carolina State Board of Elections ("State Board") setting forth what we had learned about voter removals in Beaufort, Moore, and Cumberland Counties, including information about the unlawful challenge to Ms. Hardison. On behalf of the NC NAACP, I protested that the removal of these voters from the voter rolls violated the NVRA as well as state law. In that letter, I specifically stated that the cancellation of these registrations violated the following provisions of the NVRA: 52 U.S.C. §20507(d)(1) (prohibiting removal of voters based on changed address without meeting certain requirements) and 52 U.S.C. §20507(c)(2)(A) (prohibiting systemic removal of voters within 90 days of an election). My letter included reference to Beaufort, Moore, and Cumberland purges and requested that the State Board instruct all County Boards of Elections ("CBOEs") to cease removal of voters from the rolls based on returned mail without complying with the NVRA.

17. Because the systematic purging of large numbers of registered voters from the voter rolls based on undeliverable mail, in violation of the NVRA, would cause substantial and irreparable harm to both the NC NAACP and to its members and to North Carolinians to whom

our organization provides assistance, the NC NAACP filed suit in federal court in the Middle District of North Carolina. We feared that the State's purges created a real and imminent risk that NC NAACP members and those they assist would be denied the right to vote in the November 8, 2016 general election or subsequent elections. The NC NAACP believed that members and the people our members assist as a part of our mission were having their voter registration erroneously and unlawfully challenged or purged solely on the basis of undeliverable mail, in violation of the NVRA.

18. After an evidentiary hearing and argument, the district court judge, in *North Carolina State Conference of the NAACP v. The North Carolina State Board of Elections*, No. 1:16CV1274, agreed with the NC NAACP's position and entered an injunction preventing the state from unlawfully purging voters from the voter rolls, including the NC NAACP's members.

## Harm to NC NAACP and its Members

19. Now, in this lawsuit, the plaintiff is again claiming that same-day registration is unlawful, just as the defendants argued in the case that led to the Fourth Circuit decision declaring the H.B. 589 unconstitutional and reinstating same-day registration. In addition, the plaintiff is again seeking to disenfranchise voters based on non-deliverable mail, a method already determined to be unreliable by the district court in the Middle District of North Carolina. Here, in contrast with the practices in Moore, Beaufort, and Cumberland Counties, however, the plaintiff seeks to invalidate votes already cast with no ability for the voter to establish that his or her vote was valid.

20. Based on our experience that led to the litigation in *North Carolina State Conference of the NAACP v. The North Carolina State Board of Elections*, we believe that granting the relief sought by the plaintiff in this action will irreparably harm NC NAACP

members and people our members we assist because a significant number of the same-day registrants will likely be African-American and for a variety of reasons may have correspondence from the county boards of election returned as non-deliverable. If their vote is invalidated by a preliminary injunction entered in this case, but defendants subsequently prevail, there will be no way to restore the same-day registrants' vote.

21. The relief sought by the plaintiff in this case will also directly harm the NC NAACP as an organization because it undermines the organization's hard-fought efforts to register eligible voters, to encourage early voting, and to conduct voter-education activities. Just as significantly, the relief if granted could undermine and conflict with the Fourth Circuit's decision in *North Carolina State Conference of NAACP v. McCrory* and the district court's decision in *North Carolina State Conference of the NAACP v. The North Carolina State Board of Elections*. The NC NAACP should be granted an opportunity to be heard in a proceeding that could undermine those decisions. The NC NAACP spent valuable staff time and resources pursuing the relief obtained in these two cases and is harmed when parties continue to relitigate issues already decided, especially if the organization has no opportunity to defend the prior litigation results.

22. While the NC NAACP's members and those voters we assist faced an imminent threat of disenfranchisement in the prior two litigations, the granting of the relief sought by the plaintiff in this case will, in fact, disenfranchise voters. They will be stripped of the vote they cast in this November 8, 2016 general election and have no means of regaining it, and face potential disenfranchisement in subsequent elections. The right to vote is precious, and we have fought hard to preserve that right. We respectfully request an opportunity to be heard on behalf

of our members and those voters our members assist and in defense of the decisions we obtained in hard-fought litigation that diverted our resources from other critical aspects of our mission.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed on November 28, 2016, at Raleigh, North Carolina.

_____
Rev. Dr. William J. Barber II