UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| FRANCIS X. DELUCA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NORTH CARLINA STATE BOARD OF ELECTIONS; KIM WESTBROOK STRACH, in her official capacity as Executive Director of the State Board; and A. GRANT WHITNEY, RHONDA K. AMOROSO, JOSHUA D. MALCOLM, JAMES BAKER, and MAJA KRICKER, in their official capacities as members of the State Board of Elections, | ) NO.: 5:16-CV-913 |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS A DEFENDANT**

Proposed Defendant-Intervenor North Carolina State Conference of the National Association for the Advancement of Colored People ("proposed Defendant-Intervenor" or "NC NAACP") seeks to protect its organizational interests and to ensure that no voters of color in North Carolina who use same-day registration, as allowed by law, lose the right to have their ballots counted as a result of the relief Plaintiff seeks.

**STATEMENT OF THE CASE**

Proposed Defendant-Intervenor NC NAACP adopts the statement of the case presented in the Motion to Intervene filed by proposed Defendant-Intervenors League of Women Voters of North Carolina, ("League of Women Voters"), *et al*. (Doc. No. 11). NC NAACP was a co-plaintiff with the League of Women Voters, North Carolina A. Philip Randolph Institute, and Common Cause North Carolina, in *N.C. NAACP v. McCrory*, 831

F.3d 204 (4th Cir. 2016), in which the United States Court of Appeals for the Fourth Circuit ordered Defendant State Board of Elections and others to reinstate North Carolina's same-day registration process, a process that permits voters who present at the polls during the early voting period and who are not on the voter rolls to fill out a voter registration form and cast a ballot in the same trip. There, the Fourth Circuit specifically considered and rejected the contentions made by Plaintiff in this case. *See id.* at 217. That case controls the outcome of the current litigation.

NC NAACP was also a plaintiff in *N.C. NAACP v. N.C. State Board of Elections*, No. 1:16-cv-1274, 2016 WL 6581284, at *8 f.15 (M.D.N.C. Nov. 4, 2016), in which the United States District Court for the Middle District of North Carolina granted emergency preliminary injunctive relief to prevent the State Board of Elections from purging large numbers of registered voters from the voter rolls on the basis of undeliverable mail, in violation of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501-20511. Plaintiff in the present case asserts that the relief he requests is mandated by the NVRA, but, as this recent district court ruling suggests, removal of the ballots cast by same-day registrants after the election on the basis of undeliverable mail is not mandated by the NVRA, and in fact would be in *violation* of the federal statute.

Plaintiff's requested relief would result in the disenfranchisement of NC NAACP members and the voters that our members assist because a significant number of the same-day registrants whose votes would potentially be discounted will likely be African-American. NC NAACP therefore seeks to intervene in this action, and to join the other Defendant-Intervenors in moving for dismissal of the Complaint, as well as to oppose Plaintiff's Motion for Preliminary Injunction.

## ARGUMENT

Proposed Defendant-Intervenor NC NAACP joins in full the arguments already presented by the League of Women Voters, who have already moved for intervention in this case (Doc. No. 11). The arguments presented here are intended solely to supplement those prior arguments.

### I. THIS MOTION TO INTERVENE IS TIMELY.

In the present case, proposed Defendant-Intervenor NC NAACP files its Motion to Intervene just seven days after Plaintiff filed his Complaint (Doc. No. 1, filed November 21, 2016). Defendants have not yet responded to the Complaint, and no discovery has been contemplated, scheduled, or conducted. Like the other proposed Defendant-Intervenors, NC NAACP would be able to abide by the current schedule under the Rules, or even an expedited schedule ordered by this Court, given the impending deadlines associated with the certification of the results of the current election. NC NAACP's participation in the present case would not, therefore, cause any delay or prejudice to either party.

### II. PROPOSED DEFENDANT-INTERVENOR HAS A DIRECT, SUBSTANTIAL AND LEGALLY-PROTECTABLE INTEREST IN THIS CASE THAT WILL BE IMPAIRED IF THE COURT GRANTS PLAINTIFFS' REQUESTED RELIEF

Like the League of Women Voters, NC NAACP was a plaintiff in *NC NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016), which addressed, among other issues, the elimination of same-day registration by North Carolina's Voter Information Verification Act of 2013, which the Fourth Circuit found to be intentionally discriminatory in violation of the Fourteenth Amendment and Voting Rights Act of 1965.

The organizational proposed Defendant-Intervenors who were parties to the *NC NAACP v. McCrory* litigation and who seek intervention in this case are nonprofit, nonpartisan groups that actively work to increase voter participation in North Carolina. Just

as proposed Defendant-Intervenors had standing in *NC NAACP v. McCrory* because they were harmed by the abridgement of same-day registration opportunities, the NC NAACP would be directly harmed if the Court were to grant the relief Plaintiff seeks in this action. The relief sought by Plaintiff undermines the NC NAACP's hard-fought efforts to register eligible voters, to encourage early voting, and to conduct voter-education activities – efforts on which it spends substantial time and resources, including engaging, as necessary, in litigation. Now, in this lawsuit, Plaintiff is claiming that same-day registration is unlawful on essentially the same bases that were relied upon by the defendants in *NC NAACP v. McCrory* when they argued that the legislation enacted to eliminate same-day registration was justified.

The relief requested in this case would, as a result, substantially undermine the protections for African-American voters and other voters of color that NC NAACP fought so hard to obtain in *NC NAACP v. McCrory* – a result that should not occur without the NC NAACP having an opportunity to be heard. The continued diverting of the NC NAACP's finite and limited resources, including valuable staff time, away from other critical missions warrants a determination that NC NAACP has organizational standing for similar reasons relied upon by the District Court for the Middle District of North Carolina in *N.C. NAACP v. N.C. State Board of Elections*, 2016 WL 6581284, at *8 f.15, and the NC NAACP should be allowed to participate in this litigation to protect the organization's interests.

Proposed Defendant-Intervenor NC NAACP, as an association of voters of color across the state who have experienced voter discrimination, also seeks to intervene in this matter in order to protect the rights of African American voters and other voters of color who used same-day registration to register and then voted. In this case, NC NAACP

4

anticipates that a significant proportion of the voters whose votes Plaintiff seeks to have barred will be those of African American voters and other voters of color.  *See* Declaration of Rev. Dr. William J. Barber II, attached as Exhibit 2 to the Motion to Intervene file concurrently with this Memorandum.  Should the Court enter an injunction barring inclusion of those votes in the certified results, those voters would be disenfranchised without any opportunity to be heard.  The voters will be stripped of the vote they cast and afforded no means of regaining it.  Intervention by the NC NAACP would at least allow their interests to be presented prior to the Court entering the extraordinary relief sought by Plaintiff.

As a final matter, in cases involving constitutional challenges to a particular statutory scheme, courts have held that "the interests of those who are governed by those schemes are sufficient to support intervention."  *Chils v. Thornburg*, 865 F.2d 1197, 1214 (11th Cir. 1989) (quoting 7C Charles Alan Wright, Arthur Miller and Mary Kay Kane, Federal Practice and Procedure 1908 § 285 (2d ed. 1986)).  Here, the NC NAACP's members are governed by the statutory scheme at the core of this case, and they could be retroactively stripped of their fundamental right to vote should the Court adopt Plaintiff's arguments regarding that statutory scheme.  They should be heard.  Thus, for the reasons outlined above, as well as in the separate Motion to Intervene by the League of Women Voters, *et al*. (Doc. No. 11), proposed Defendant-Intervenor NC NAACP, as an association that represents citizens' voting rights protected by the NVRA and the Fourteenth Amendment, has a legally recognizable interest in this action.

### III. PROPOSED DEFENDANT-INTERVENOR'S UNIQUE INTEREST IN THIS CASE IS NOT PROTECTED BY DEFENDANT

While the present Defendants' obligation is to represent the broad interests of the State Board of Elections, the NC NAACP represents specifically its own organizational

interests and the interests of African American voters living in North Carolina. Defendants do not have the same stake in this case as does the NC NAACP and the voters of color it represents, which are the intended beneficiaries of the NVRA and the Fourteenth Amendment.

Courts have found that government entities cannot adequately represent the interests of private parties. *See, e.g., Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986). Significantly, agreement on the constitutionality or lawfulness of a statute does not imply that the proposed Defendant-Intervenor and the State Board of Elections would agree on all grounds. *See Nat. Res. Defense Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977). These cases make clear that the interests of intended beneficiaries, here African American voters and voters of color, and the government entity responsible for enforcing the statutes designed to protect them, are not coextensive. This divergence often affects the course of litigation. Indeed, the NC NAACP only a month ago had to sue Defendants in order to protect the interests of African-American voters when Defendants did not act to stop the purging of voter rolls by county boards of election based on a mailing returned as undeliverable. *See N.C. NAACP*, 2016 WL 6581284

Given the unique and important perspectives of the NC NAACP with respect to the experience of voters of color in North Carolina, its intervention in this matter would very likely enhance the Court's understanding of the underlying legal and factual issues and promote an efficient resolution of this action. The defenses and claims presented by the NC NAACP will have common questions of law and fact as the Complaint. Intervention will not delay the litigation, as the action has just commenced and the NC NAACP has averred that it will participate on the same schedule that will be established for the existing parties. In all, these factors clearly establish the propriety of intervention in this case.

## IV. AS A GENERAL MATTER, COURTS RECOGNIZE THE PARTICULAR SIGNIFICANCE OF RULE 24 INTERVENTION IN VOTING RIGHTS CASES

Intervention in voting rights cases by those representing the interests of African American and other voters of color is often appropriate because the interests of the intended beneficiaries of voting rights statutes will likely add necessary perspectives and arguments to legal proceedings involving interpretations of these statutes. It is also appropriate because those interests may differ from the positions of institutional parties such as the Attorney General or Board of Elections. Indeed, courts have granted intervention in a broad range of voting rights matters. *See*, *e.g.*, *Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003) (upholding district court's granting of private parties' motion to intervene on grounds that intervenors' interests were not adequately represented by existing parties and finding generally that private parties may intervene in Section 5 declaratory judgment actions if the requirements of Rule 24 are satisfied); *Meek v. Metro Dade Cty., Fla.*, 985 F.2d 1471, 1475 (11th Cir. 1993), *abrogated by Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007) (reversing district court's denial of intervention in vote dilution action).

District courts have also regularly permitted intervention in voting rights cases in which the United States or other governmental entity has been a party. *See*, *e.g.*, *Miss. State Democratic Party v. Barbour*, No. 4:-6 CV 29 P B, 2007 WL 2071800, at *7 (N.D. Miss. July 17, 2007) (permitting NAACP intervention in voting rights suit against Governor, Attorney General, and Board of Election Commissioners); *Shaw v. Hunt*, 861 F. Supp. 408, 420 (E.D.N.C.      ); *Vera v. Richards*, 861 F. Supp. 1304, 1310 (S.D. Tex. 1994); *Miller v. Johnson*, 515 U.S. 900, 909 (1995); *Abrams v. Johnson*, 521 U.S. 74, 78 (1997); *Meek v. Metro. Dade Cty., Fla.*, 985 F.2d 1471, 1475 (11th Cir. 1993). For example, in *Miller v. Blackwell*, 348 F. Supp. 2d 916 (S.D. Ohio 2004), the court permitted

7

intervention in a suit arising under the NVRA after determining that the claimant's interest in avoiding dilution of their votes was different from the interests of state election officials, thus reducing the likelihood that those officials could adequately represent the interests of the intervenors. Voters in North Carolina whose right to vote historically was abridged by voter suppression tactics have a strong interest in protecting their ability to elect candidates of their choice and have an interest in their voices being heard in this litigation.

## CONCLUSION

Proposed Defendant-Intervenor NC NAACP respectfully requests that the Court grant its motion to intervene either as a matter of right or, alternatively, as a matter of permissive intervention.

Respectfully submitted this 29th day of November, 2016.

/s/ Irving Joyner
Irving Joyner
P.O. Box 374 (Bar No. 7830)
Cary, North Carolina 27512
Telephone: 919-319-8353
Email: ijoyner@NCCU.EDU

Martha A. Geer (Bar No. 13972)
COHEN MILSTEIN SELLERS &
 TOLL PLLC
150 Fayetteville Street
STE. 980
Raleigh, NC 27601
Telephone: 919-890-0560
Facsimile: 919-890-0562
Email: mgeer@cohenmilstein.com

Joseph M. Sellers
Brian Corman
COHEN MILSTEIN SELLERS &
  TOLL PLLC
1100 New York Avenue, N.W.
East Tower, STE. 500
Washington, DC 20005-3964
Telephone:  202-408-4600
Facsimile:   202-408-4699
Email:  jsellers@cohenmilstein.com
Email:  bcorman@cohenmilstein.com

Penda D. Hair
Caitlin A. Swain
Leah J. Kang
FORWARD JUSTICE
1401 New York Ave., NW, STE 1225
Washington, DC 20005
Telephone: (202) 256-1976
Email: phair@forwardjustice.org
Email:  cswain@forwardjustice.org
Email:  Lkang@forwardjustice.org

*Attorneys for North Carolina State Conference of the National Association for the Advancement of Colored People*

# **CERTIFICATE OF SERVICE**

I certify that on this day I filed the foregoing **Memorandum in Support of Motion to Intervene as Defendants** with the clerk's office via the CM/ECF system, which will send notification of filing to the following counsel of record:

Karl S. Bowers, Jr.
P.O. Box 50549
Columbia, SC  29250
Telephone: 803-260-4124
butch@butchbowers.com

Joshua Brian Howard
Gammon, Howard & Zeszotarski PLLC
115 ½ West Morgan Street
Raleigh, NC  27601
Telephone: 919-521-5878
jhoward@ghz-law.com

Alexander M. Peters
James Bernier
Office of the Attorney General
P.O. Box 629
Raleigh, NC  27602
apeters@ncdoj.gov
jbernier@ncdoj.gov

Joshua Lawson
General Counsel
North Carolina State Board of Elections
441 N. Harrington St.
Raleigh, NC  27603
Telephone: 919-715-9194
joshua.lawson@ncsbe.gov


This the 29th day of November, 2016.

                   */s/ Irving Joyner*