# Attachment 3

Dew ex rel. K.W. v. Colvin, Not Reported in F.Supp.2d (2013)

2013 WL 4523617

2013 WL 4523617
Only the Westlaw citation is currently available.
United States District Court, E.D. North Carolina,
Eastern Division.

Karen DEW, on behalf of K.W., a minor, Plaintiff,
v.
Carolyn W. COLVIN, Acting Commissioner
of Social Security, Defendant.

No. 4:12–CV–129–D.
|
Aug. 27, 2013.

**Attorneys and Law Firms**

Roberta L. Edwards, Law Office of Roberta L. Edwards,
P.A., Rocky Mount, NC, for Plaintiff.

Jeannette M. Mandycz, Social Security Administration,
Baltimore, MD, for Defendant.

### ORDER

JAMES C. DEVER III, Chief Judge.

 **\*1** On August 13, 2013, Magistrate Judge Gates issued
a Memorandum and Recommendation ("M & R") [D.E.
33]. In the M & R, Judge Gates recommended that
plaintiff's motion for remand [D.E. 3] be denied, that
plaintiffs motion for judgment on the pleadings [D.E.
26] be granted, that defendant's motion for judgment on
the pleadings [D.E. 30] be denied, and that the action be
remanded to the Commissioner. Neither party objected to
the M & R.

"The Federal Magistrates Act requires a district court
to make a de novo determination of those portions
of the [magistrate judge's] report or specified proposed
findings or recommendations to which objection is made."
*Diamond v. Colonial Life & Accident Ins. Co.,* 416 F.3d
310, 315 (4th Cir.2005) (alteration in original) (emphasis
and quotation omitted). Absent a timely objection, "a
district court need not conduct a de novo review, but
instead must only satisfy itself that there is no clear
error on the face of the record in order to accept the
recommendation." *Id.* (quotation omitted).

The court has reviewed the M & R and the record. The
court is satisfied that there is no clear error on the face of
the record. Accordingly, the court adopts the conclusions
in the M & R [D.E. 33]. Plaintiff's motion for remand
[D.E. 3] is DENIED, plaintiff's motion for judgment on
the pleadings [D.E. 26] is GRANTED, defendant's motion
for judgment on the pleadings [D.E. 30] is DENIED, and
the action is REMANDED to the Commissioner under
sentence four of 42 U.S.C. § 405(g).

SO ORDERED.

### MEMORANDUM AND RECOMMENDATION

JAMES E. GATES, United States Magistrate Judge.

In this action, plaintiff Karen Dew ("plaintiff"), on behalf
of K.W., her minor child, challenges the final decision
of defendant Acting Commissioner of Social Security
Carolyn W. Colvin ("Commissioner") denying K.W.'s
application for supplemental security income ("SSI")
on the grounds that she is not disabled. The case is
before the court on the parties' respective motions for
judgment on the pleadings. (D.E.26, 30). Each party filed
a memorandum in support of its motion (D.E.26–1, 31).
Also before the court is plaintiff's motion (D.E.3) to
remand, filed prior to her motion for judgment on the
pleadings, to which the Commissioner did not respond.
The motions were referred to the undersigned Magistrate
Judge for a memorandum and recommendation pursuant
to 28 U.S.C. § 636(b)(1)(B). (D.E.32). For the reasons
set forth below, it will be recommended that plaintiff's
motion to remand be denied, her motion for judgment
on the pleadings be allowed, the Commissioner's motion
for judgment on the pleadings be denied, and this case be
remanded.

### I. BACKGROUND

#### A. Case History

Plaintiff filed an application on behalf of K.W. for SSI
on 24 September 2008, alleging a disability onset date
of 6 January 2005. Transcript of Proceedings ("Tr."),
*e.g.,* 12. The application was denied initially and upon
reconsideration, and a request for hearing was timely
filed. Tr., *e.g.,* 12. On 3 September 2010, a hearing was
held before an Administrative Law Judge ("ALJ"). Tr.
50–87. In a written decision dated 28 October 2010, the

Dew ex rel. K.W. v. Colvin, Not Reported in F.Supp.2d (2013)

2013 WL 4523617

ALJ found that plaintiff was not disabled and therefore not entitled to SSI. Tr. 12–25. Plaintiff timely requested review by the Appeals Council. Tr. 6–8. The Appeals Council denied the request for review on 31 May 2012. Tr. 1–3. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 3 July 2012 pursuant to 42 U.S.C. § 1383(c)(3). (*See* Amend. *In Forma Pauperis* Mot. (D.E.6); Order Allowing Mot. (D.E.7); Compl. (D.E.8)).

### B. Standards for Disability

**\*2** The Social Security Act ("Act") defines disability for children (*i.e.,* persons who have not attained the age of 18, 20 C.F.R. § 416.902) as having a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The disability regulations under the Act ("Regulations") provide a three-step analysis that the ALJ must follow to determine whether a child is disabled.

At the first step, the ALJ determines whether the child is doing substantial gainful activity. If he is, the child is found not disabled. 20 C.F.R. § 416.924(a).

Second, the ALJ determines whether the child's impairment or impairments are severe. If they are not, the child is found not disabled. *Id.*

Third, the ALJ determines whether the child has an impairment or combination of impairments that meets or medically equals a Listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("Listings") or, if not, that is functionally equivalent to the Listings. *Id.* §§ 416.924(a), 416.926a(a).

The Listings consist of impairments, organized by major body systems that, for children, are deemed to cause "marked and severe functional limitations." 20 C.F.R. § 416.925(a). An impairment meets a Listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990); Soc. Sec. Ruling 83–19, 1983 WL 31248 (1983). An impairment medically equals a Listing if medical findings establish that it is equal in severity and duration to the criteria for that Listing. *Sullivan,* 493 U.S. at 531; 20 C.F.R. § 416.926(a). It is not sufficient to show simply "that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan,* 493 U.S. at 531. An impairment is functionally equivalent to the Listings if it results in the requisite level of limitation in six specified functional domains. 20 C.F.R. § 416.926a(a).

The burden rests on the claimant to show that an impairment or combination of impairments meets or medically equals a Listing or is functionally equivalent to the Listings. *See Pass v. Chater,* 65 F.3d 1200, 1203 (4th Cir.1995); *Smith ex rel. B.M.M. v. Astrue,* Civ. No. 6:08–cv–06027, 2009 WL 2486055, at \*6 (W.D. Ark. 12 Aug. 2009) (child's claim), *aff'd,* 379 Fed. Appx. 546 (8th Cir.2010); *S.R. ex rel. R.R. v. Barnhart,* 371 F.Supp.2d 796, 799 (W.D.Va.2005) (child's claim). If such a showing is made by the claimant, an irrebuttable presumption of disability arises and benefits must be awarded. *S.R. ex rel. R.R.,* 371 F.Supp.2d at 799.

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effects of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923; *see also* 20 C.F.R. § 416.924(a) (requiring the ALJ to "consider the combined effects of all [the claimant's] impairments upon [the claimant's] overall health and functioning"). If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

**\*3** K.W. was 6 years old on the date the application was filed and 8 years old on the date of the ALJ's decision. Tr. 15 ¶ 1. Applying the three-step analysis of 20 C.F.R. § 416.924(a), the ALJ found at step one that K.W. had not engaged in substantial gainful activity since the date of her application. Tr. 15 ¶ 2. At step two, the ALJ found that K.W. had the following medically determinable impairments that were severe within the meaning of the Regulations: juvenile arthritis and attention deficit hyperactivity disorder ("ADHD"). Tr. 15 ¶ 3. At step three, the ALJ found that K.W.'s impairments did not meet or medically equal any Listing and were not functionally equivalent to the Listings. Tr. 15 ¶¶ 4, 5. She found specifically that K.W.'s impairments did not meet the Listings for mental disorders, Listings 112.00, *et seq.,* which include Listing 112.11 for ADHD. Tr. 15 ¶ 4. The

Case 5:16-cv-00913-D  Document 40-4  Filed 12/02/16  Page 3 of 9

Dew ex rel. K.W. v. Colvin, Not Reported in F.Supp.2d (2013)

2013 WL 4523617

ALJ accordingly concluded that K.W. was not disabled. Tr. 24 ¶ 6.

## II. PLAINTIFF'S MOTION FOR REMAND

Shortly after initiating this action, plaintiff filed a motion to remand the case so that purportedly new and material evidence, in the form of records of treatment occurring after the date of the ALJ's decision, could be considered by the Commissioner. (Mot.1). While the motion includes a statement of the applicable standards for consideration of new evidence, it contains no argument under those standards. In violation of Local Civil Rule 7.1(d), E.D.N.C, plaintiff did not file a memorandum in support of the motion.

Plaintiff also failed to file with the motion copies of the alleged new evidence, referenced in the motion as Exhibits A to C. (Mot.2). To date, plaintiff has not filed the missing exhibits even after having been notified by the Clerk of the error. (*See* 3 Aug. 2012 Notice of Deficiency). The failure to provide these exhibits to the court constitutes a further violation of Local Civil Rule 7.1(d), which requires that "[w]here appropriate, motions shall be accompanied by affidavits or other supporting documents." Local Civil Rule 7.1(d), E.D.N.C.

Thus, in violation of the Local Civil Rules of this court, the motion is unsupported by both argument and the documents necessary for a substantive ruling. It will therefore be recommended that the motion to remand be summarily denied.

## III. MOTIONS FOR JUDGMENT ON THE PLEADINGS

### A. Standard of Review

Under [42 U.S.C. § 405(g)](), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales,* 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir.1986); *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir.1972).

Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Perales,* 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales,* 402 U.S. at 401.

**\*4** The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan,* 993 F.2d 31, 34 (4th Cir.1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater,* 76 F.3d 585, 589 (4th Cir.1996); *King v.. Califano,* 599 F.2d 597, 599 (4th Cir.1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock,* 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers,* 131 F.3d 438, 439–40 (4th Cir.1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler,* 715 F.2d 148, 150 (4th Cir.1983).

### B. Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ erred by: (1) determining that K.W.'s impairments do not meet or medically equal Listing 112.11 for ADHD, arguing that the ALJ failed to properly evaluate the opinions of K.W.'s treating psychiatrist; and (2) determining that K.W.'s impairments do not functionally equal the Listings, citing the testimony of K.W.'s mother, plaintiff, to the effect that K.W. does have Listing-level functional limitations. The court will examine each contention in turn.

### C. Plaintiff's Contention regarding the ALJ's Listing 112.11 Determination

To satisfy Listing 112.11, a claimant must first satisfy the diagnostic definition of ADHD, namely, that the claimant's disorder is "[m]anifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity." Listing 112.11. The required level of

Dew ex rel. K.W. v. Colvin, Not Reported in F.Supp.2d (2013)

2013 WL 4523617

severity is established by satisfying both the A and B criteria. The A criteria require medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity. *Id.*

The B criteria require that, for a child aged 3 to 18, the foregoing conditions result in at least two of the following specified in Listing 112.02B.2 (for organic disorders): marked impairment in age-appropriate cognitive/communicative function, marked impairment in age-appropriate social functioning, marked impairment in age-appropriate personal functioning, or marked difficulties in maintaining of concentration, persistence, or pace. *See* Listings 112.11, 112.02B.2.

In her decision, the ALJ determined that K.W. did not meet any Listing for the following reasons:

> Despite the combined impairments, the medical evidence does not document listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.

 **\*5**  Tr. 15 ¶ 4. Although, as indicated, the ALJ found specifically that K.W. did not meet any Listings for mental disorders, she did not make any findings specific to that determination.

Plaintiff argues that the ALJ's determination is erroneous as to Listing 112.11 because the ALJ failed to consider the medical source statements of Monique Brown–King, M.D., K.W.'s treating psychiatrist. The court agrees that the ALJ erred in her handling of the opinion evidence from Dr. Brown–King.

The rules regarding the weight to be accorded medical opinion evidence and the ALJ's duty to explain such weight are well established. The Regulations provide that opinions of treating physicians, including psychiatrists, on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques, and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(d) (2); *see Craig,* 76 F.3d at 590; *Ward v. Chater,* 924 F.Supp. 53, 55–56 (W.D.Va.1996); Soc. Sec. Ruling

96–2p, 1996 WL 374188, at \*2 (2 July 1996). The reason is that the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C .F.R. § 416.927(d)(2). If the medical opinions of the treating source are not given controlling weight, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, and any specialization of the provider. *Id.* § 416.927(d)(2)-(6). An ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96–2p, 1996 WL 374188, at \*5; *see also* 20 C.F.R. § 416.927(d)(2). Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. § 416.927(d); Soc. Sec. Ruling 96–5p, 1996 WL 374183, at \*2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See id.* at \*3.

The ALJ's evaluation of the opinions of Dr. Brown–King did not conform to these standards. As plaintiff points out, nowhere in the decision did the ALJ discuss, or refer to by exhibit number (*i.e.,* Ex. 23F) or otherwise an opinion by Dr. Brown–King that K .W. demonstrated marked inattention, marked impulsiveness, and marked hyperactivity, which would constitute evidence that K.W.'s ADHD satisfies the A criteria of Listing 112.11. Tr. 755. Moreover, the ALJ's determination at step three that "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment" (Tr. 15 ¶ 4) affirmatively suggests that the ALJ did not consider this evidence. While the ALJ does state that she considered "all the evidence" and "the entire record" (Tr. 12, 15), the decision does not enable the court to determine definitively whether the ALJ considered this opinion by Dr. Brown–King. Even if the ALJ were deemed to have considered it, there certainly is no exposition of the "specific reasons for the weight given

**Dew ex rel. K.W. v. Colvin, Not Reported in F.Supp.2d (2013)**

2013 WL 4523617

to the treating source's medical opinion." Soc. Sec. Ruling 96–2p, 1996 WL 374188, at *5.

**\*6** Dr. Brown–King also opined, on 3 September 2009, that K.W.'s anger-control problems appeared to be chronic and that her anger-management problems "have interfered with her behavior in school" and with "[her] social functioning." Tr. 854. She further concluded that "[b]ased on the risk of morbidity without treatment and description of interference with function, severity is estimated to be high." *Id.* These opinions obviously tend, to some degree, to counter the ALJ's determination that K.W. does not meet or medically equal Listing 112.11. Yet the ALJ does not explicitly address or otherwise clearly indicate the weight she accorded these opinions or the reasons for such weight.

In addition, at each office visit over a one-year period, Dr. Brown–King found that K.W. had a Global Assessment of Functioning [1] ("GAF") score of 50, which suggests that K.W. had serious symptoms or impairments. Tr. 856, 859, 862, 864, 867, 869, 872, 875. The ALJ did not indicate the weight she accorded any of these assessments.

Plaintiff, as indicated, relates the ALJ's failure to properly evaluate the opinions of Dr. Brown–King solely to her Listing 112.11 determination. It is true that this failure precludes the court from determining whether this determination is supported by substantial evidence. But the ALJ's failure to properly evaluate Dr. Brown–King's opinions taints her entire decision with error, including the ALJ's determination regarding functional equivalence. An ALJ is required "to build an accurate and logical bridge from the evidence to [his] conclusions so that we may afford the claimant meaningful review of the [Commissioner's] ultimate findings." *Blakes ex rel. Wolfe v. Barnhart,* 331 F.3d 565, 569 (7th Cir.2003). Here, the ALJ failed to do so by not properly evaluating the opinion evidence from Dr. Brown–King.

For all the foregoing reasons, this case should be remanded for further proceedings. *See K.B. ex rel. Beymer v. Colvin,* No. CV–11–0756–TUC–DTF, 2013 WL 1249228, at *2–3 (D. Ariz. 26 Mar. 2013) (remanding for further proceedings where the ALJ summarized one of the child claimant's appointments with a treating psychiatrist, but failed to discuss the psychiatrist's opinions that the child exhibited marked limitations in certain functional areas); *Fagin ex rel. B.P. v. Comm'r of Soc. Sec.,*

No. 1:10–cv–813, 2012 WL 213801, at *6 (S.D. Ohio 24 Jan. 2012) (mag. judge's rep. & recommendation) (recommending remand for further proceedings, in part, on the grounds that the ALJ "seemingly ignored ... pertinent information" in a teacher's report that, when considered with a "longitudinal view" of the child claimant's school performance, indicated serious limitations of functioning), *adopted,* 2012 WL 2012 WL 481787 (14 Feb. 2012); *see also Ladson v. Astrue,* No. 4:11–2565–TER, 2013 WL 655971, at *9 (D.S.C. 22 Feb. 2013) (remanding case for ALJ to address opinions of plaintiff's treating physicians and explain weight accorded thereto); *Wilson v. Astrue,* No. 4:11cv102, 2012 WL 4717873, at *13 (E.D. Va. 1 Oct. 2012) (remanding case where ALJ did not adequately explain reasoning for giving medical opinion only "slight evidentiary weight"); *Hampton v. Astrue,* No. 5:11–698–TMC, 2012 WL 3715941, at *2 (D.S.C. 28 Aug. 2012) (remanding where the ALJ failed to explain what weight was given to a treating physician's opinion); *Padgett v. Astrue,* No. 7:11–CV–105–FL, 2012 WL 1884700, at *4 (E.D.N.C. 2 May 2012) (mag. judge's rep. & recommendation) ("Without an analysis of all evidence and a sufficient explanation of the weight given to obviously probative exhibits it is not possible to determine if the ALJ's decision is supported by substantial evidence.... Therefore, the ALJ should have explained the weight given to these [chiropractic] records."), *adopted,* 2012 WL 1884696 (23 May 2012); *Mandycz v. Astrue,* No. SAG–10–2287, 2011 WL 5515489, at *2 (D. Md. 9 Nov. 2011) (remanding where ALJ expressly considered the medical opinions in plaintiff's file, but failed to indicate weight given to the opinions).

### D. Plaintiff's Contention regarding the ALJ's Functional Equivalence Determination

**\*7** An impairment or combination of impairments is functionally equivalent to the Listings if it results in an "extreme" limitation in one of six specified functional domains or a "marked" limitation in two or more of the domains. 20 C.F.R. § 416.926a(a); *see generally* Soc. Sec. Ruling 09–1p, 2009 WL 396031 (17 Feb. 2009). The six functional domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1)(i)-(vi). A marked limitation in a domain is found "when [the claimant's] impairment(s) interferes seriously with [the claimant's] ability to independently initiate, sustain,

**Dew ex rel. K.W. v. Colvin, Not Reported in F.Supp.2d (2013)**

2013 WL 4523617

or complete activities," *id.* § 416.926a(e)(2)(i), or "when [the claimant has] a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and [the claimant's] day-to-day functioning in domain-related activities is consistent with that score," *id.* § 416.926a(e)(2)(iii). An extreme limitation in a domain is found "when [the claimant's] impairment(s) interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," *id.* § 416.926a(e)(3)(i), or "when [the claimant has] a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and [the claimant's] day-to-day functioning in domain-related activities is consistent with that score," *id.* § 416.926a(e)(3)(iii).

In her decision, the ALJ discussed each functional domain separately and evidence relating to it. She found that plaintiff had no limitation in acquiring and using information, or interacting or relating with others, and less than marked limitation in attending and completing tasks, moving about and manipulating objects, caring for herself, and health and physical well-being. Tr. 19–24 ¶ 5. She therefore concluded that K.W. did not have any impairment or combination of impairments that functionally equals the Listings. Tr. 15 ¶ 5.

In challenging the ALJ's analysis, plaintiff relies primarily on testimony by plaintiff, as K.W.'s mother and primary caregiver, detailing functional limitations purportedly imposed on K.W. by her ADHD and juvenile arthritis. Plaintiff argues that this evidence shows that K.W. has marked limitations in two functional domains-interacting and relating with others, and health and physical well-being-and that the ALJ therefore erred in not finding her impairments to be functionally equivalent to the Listings. Plaintiff, in effect, is asking the court to find that plaintiff's testimony, along with the other evidence of record, establishes as a matter of law that K.W. has marked limitations in the two domains noted and that the ALJ could not properly determine to the contrary. The court does not agree that the record dictates such a conclusion.

**\*8** Nonetheless, plaintiff's argument suggests a deficiency that she does not raise explicitly—the failure of the ALJ to make findings regarding the credibility of

plaintiff. Such findings are required. If a child is "unable to adequately describe [his] symptom(s), [the ALJ] will accept as a statement of this symptom(s) the description given by the person who is most familiar with [the child], such as a parent, other relative, or guardian." 20 C.F.R. § 416.928(a). "The ALJ 'must make specific findings concerning the credibility of the [caregiver's] testimony, just as he would if the child were testifying.' " *Holley ex rel. D.H. v. Astrue,* No. 2:11–CV–11–FL, 2012 WL 1029147, at \*4 (E.D.N.C. 5 Mar. 2012) (mag. judge's rep. & recommendation) (quoting *Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir.2001)), *aff'd and adopted,* 2012 WL 1027816 (26 Mar. 2012).

The ALJ's assessment of the caregiver's credibility involves a two-step process. *Craig v. Chater,* 76 F.3d 585, 593–96 (4th Cir .1996); 20 C.F.R. § 416.929(a)-(c); Soc. Sec. Ruling 96–7p, 1996 WL 374186, at \*1 n. 1; 2 (2 July 1996). First, the ALJ must determine whether the claimant's medically documented impairments could cause the claimant's alleged symptoms. Soc. Sec. Ruling 96–7p, 1996 WL 374186, at \*2. Next, the ALJ must evaluate the extent to which the caregiver's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.; see also* 20 C.F.R. § 416.1529(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find the caregiver's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. Ruling 96–7p, 1996 WL 374186, at \*2, 4; *see also Jonson v. Colvin,* No. 12cvl742, 2013 WL 1314781, at \*7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart,* 421 F.Supp.2d 898, 906 (D.S.C.2006).

The need for findings was enhanced here because the findings the ALJ did make conflict with much of plaintiff's testimony, suggesting that the ALJ gave such testimony little, if any, weight for reasons not explained. *See Holley ex rel. D.H.,* 2012 WL 1029147, at \*4. For example, in determining K.W.'s functionality in the domain of attending and completing tasks, the ALJ discusses K.W.'s reported ability to attend and complete tasks at school, but she fails to discuss how she weighed plaintiff's testimony that K.W. is unable to complete homework

Dew ex rel. K.W. v. Colvin, Not Reported in F.Supp.2d (2013)

2013 WL 4523617

in the evenings and that it can take her an hour and a half to do a homework assignment that should take 20 minutes. *See* Tr. 80. With respect to the domain of caring for oneself the ALJ also cites plaintiff's testimony "that she helped [K.W.] with dressing on occasion," apparently discounting plaintiff's testimony that due to K.W.'s arthritis, she had to help K.W. dress in the mornings "most of the time," and even had to help her feed herself two to three times a week. Tr. 72–73.

 **\*9** Further, the ALJ references the treatment of K.W.'s ADHD only twice in the decision, stating only that K.W. had been "placed on medication." Tr. 18, 21. But she did not discuss the weight she gave to plaintiff's testimony that K.W. has been on 4 different medications in less than 12 months due to medication side effects such as weight loss and motor tics, and that K.W.'s current medication was not controlling her behavior. Tr. 77–79.

The failure of the ALJ to make the requisite credibility findings affects, of course, not only the ALJ's functional equivalence determination, but the other stages of her analysis, including her determination on Listing 112.11. For this and the other reasons stated, the Commissioner should include the requisite findings on plaintiff's credibility in her remand decision. *See Solis v. Astrue,* No. 09–2032(DMC), 2011 WL 2609864, at \*11 (D.N.J. 30 June 2011) (remanding the case for an explanation of reasons supporting the ALJ's determination that child claimant's ADHD was not functionally equivalent to a listing without discussing evidence in the record, including mother's testimony, that contradicted ALJ's adoption of evidence that the child was able to concentrate and stay on task when on medication).

#### E. Need for Discussion of Weight Accorded Certain Testing Evidence

Additional evidence the Commissioner needs to discuss further on remand is the results of a Conners' Continuous Performance Test II administered to K.W. by C. Keith Conners, Ph.D., on 9 September 2010. Tr. 878–87. This test, which is used in the diagnosis of ADHD (Tr. 879), assesses an individual on specific measures relating to inattention, impulsiveness, and vigilance (Tr. 882–83). The results showed that K.W. had "poor performance" on the test suggesting "potential attention problems." Tr. 886. Further, the test's confidence index showed that the chances that K.W. has a clinically significant attention problem are "99.90 out of 100." Tr. 884. More specifically,

of the 12 separate measures made by the test, K.W. was within average range on 3 of the measures, "a little slow" on 1 measure, but "markedly atypical" on the remaining 8 measures. Tr. 882. Despite the indication in these test results that K.W. exhibited marked severity in a majority of the measured behaviors, the ALJ references this exhibit by stating only that "Keith Conner, Ph.D., also diagnosed the claimant with [ADHD]." Tr. 18 ¶ 5.

The results of standardized psychological tests are relevant in determining the level of severity of ADHD for purposes of the B criteria in Listing 112.11B. *See* Listings 112.11B, 112.02B.2.a-c. In addition, with respect to the issue of functional equivalence, one of the alternative definitions of "marked" or "extreme" severity in the six domains of functionality looks, in part, to whether a child's score on a standardized test is greater than two ("marked") or three ("extreme") standard deviations below the mean. 20 C.F.R. §§ 416.926a(e)(2)(iii), (e)(3)(iii). Thus, this evidence is clearly relevant to central issues in this case. On remand, the Commissioner should make clear that she has considered this evidence and the weight she has accorded it. *See, e.g., Vanburen v. Astrue,* No. 5:11–CV–615–FL, 2012 WL 5493602, at \*3 (E.D.N.C. 13 Nov. 2012) (mag. judge's rep. & recommendation) ("While an ALJ is not required to discuss every piece of evidence, he should discuss the evidence supporting his decision and the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") (internal quotation marks omitted) (quoting *Byrd v. Astrue,* Civ. Act. No. 5:11CV48, 2012 WL 293304, \* 4 (N.D.W. Va. 1 Feb. 2012)), *adopted,* 2012 WL 5499887 (13 Nov. 2012).

#### IV. CONCLUSION

 **\*10** For the foregoing reasons, IT IS RECOMMENDED that plaintiffs motion to remand (DE.3) be DENIED, plaintiffs motion (DE.26) for judgment on the pleadings be ALLOWED, the Commissioner's motion (DE.30) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation. In making this recommendation, the court expresses no opinion on the weight that should be accorded to the opinions of Dr. Brown–King, the extent to which the testimony of plaintiff should be credited, or the weight to be accorded or credibility of any other evidence. These are all

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.                    7

**Dew ex rel. K.W. v. Colvin, Not Reported in F.Supp.2d (2013)**

2013 WL 4523617

matters left for determination by the Commissioner in the recommended remand proceedings.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have until 22 August 2013 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 10 calendar days after service of the objections on the responding party or by 3 September 2013, whichever is earlier.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 4523617

Footnotes

1    The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) ("DSM–IV–TR"). Selected GAF scores have the following meanings:

80–71 If symptoms are present they are transient and expectable reactions to psychosocial stressors; no more than slight impairment in social, occupational, or school functioning.

70–61 Some mild symptoms OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships.

60–51 Moderate symptoms OR moderate difficulty in social, occupational, or school functioning in social, occupational, or school functioning.

50–41 Serious symptoms OR any serious impairment in social, occupational, or school functioning.

DSM–IV–TR 34.

---

**End of Document**                                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.