# Attachment 7

2011 WL 4544047
Only the Westlaw citation is currently available.
United States District Court, E.D. North Carolina,
Southern Division.

HARLEYSVILLE LIFE
INSURANCE COMPANY, Plaintiff,
v.
Richard Wayne HARRELSON, Linnie Bell Braswell,
Dillon Duboise, Orbie Lee Duboise, Paul Duboise,
Kathryn Hinson, Kay Nealey, Mary Stevens, and
Estate of Joyce Gail Harrelson Duboise, Defendants.

No. 7:10–CV–00051–DAN.
|
Sept. 29, 2011.

**Attorneys and Law Firms**

Curtis Michael Thompson, Garner & Williamson, P.A., Winston–Salem, NC, John Alan High, Hill & High, Whiteville, NC, for Defendants.

*ORDER*

DAVID W. DANIEL, United States Magistrate Judge.

*1 This matter is before the Court on the motion for summary judgment of Defendants Linnie Bell Braswell, Dillon DuBoise, Orbie Lee DuBoise, Paul DuBoise, Kathryn Hinson, Kay Nealey, and Mary Stevens [DE–54] and the motion to amend/correct answer of Defendants Richard Wayne Harrelson and the Estate of Joyce Gail Harrelson DuBoise [DE–57]. All appropriate responses have been filed. Thus, the two motions are presently ripe for review.

*STATEMENT OF THE CASE*

On March 19, 2010, Harleysville Life Insurance Company ("Plaintiff") filed the Complaint [DE–1] in this interpleader action against Defendants Richard Wayne Harrelson, Linnie Bell Braswell, Dillon DuBoise, Orbie Lee DuBoise, Paul DuBoise, Kathryn Hinson, Kay Nealey, and Mary Stevens. This Court has jurisdiction over the matter because all of the defendants claim to be entitled to the proceeds of a life insurance policy held by the late Charles DuBoise ("Decedent"), which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461.

On April 26, 2010, Plaintiff filed a Motion to Deposit Funds into Court Registry and Motion for Dismissal [DE–21]. On June 9, 2010, Chief Judge Flanagan entered an Order [DE–32] granting Plaintiff's motion and ordering that Plaintiff deposit $55,000 plus interest accrued thereon with the Court, representing the amount to be disbursed under the disputed life insurance policy. As a result, Plaintiff was dismissed with prejudice from this action.

On May 17, 2010, Defendants Linnie Bell Braswell, Dillon DuBoise, Orbie Lee DuBoise, Paul DuBoise, Kathryn Hinson, Kay Nealey, and Mary Stevens (collectively "the Defendant Siblings") filed an Answer [DE–27]. On May 20, 2010, Defendant Richard Wayne Harrelson ("Harrelson") filed an Answer and Motion to Join a Required Party [DE–30], which sought to add the Estate of Joyce Gail Harrelson DuBoise as a party to this action. On July 8, 2010, this action was referred to the undersigned [DE–36] for conduct of all further proceedings, and on October 19, 2010, the undersigned granted the requested joinder [DE–53]. Hereinafter, Harrelson and the Estate of Joyce Gail Harrelson DuBoise are collectively referred to as "the Defendants Harrelson."

On January 12, 2011, the Defendant Siblings filed a Motion for Summary Judgment [DE–54]. The Defendants Harrelson responded [DE–56] on February 2, 2011. On February 3, 2011, the Defendants Harrelson filed a Motion to Amend/Correct Answer [DE–57], which sought to amend their answer to allege the affirmative defense of release. The Defendant Siblings responded [DE–61] on February 22, 2011. Accordingly, both motions are currently ripe and before the undersigned for disposition.

*STATEMENT OF FACTS*

The facts which gave rise to this action are not in dispute. Plaintiff provided Decedent with a group term life insurance policy ("the Policy") which went into effect on or about December 1, 2004. Compl. ¶ 13 [DE–1]. Decedent and his wife, Joyce DuBoise ("DuBoise"), died as a result of injuries sustained in an automobile accident on November 1, 2008. Compl. ¶¶ 15, 18; Def. Siblings' Mem.

in Supp. of Mot. for Summ. J. at 1–2 (hereinafter "Mem. in Supp.") [DE–55]; Mem. in Opp'n to Def. Siblings' Mot. for Summ. J. at 1–2 (hereinafter "Mem. in Opp'n") [DE–56]. DuBoise factually predeceased Decedent by six hours. Mem. in Supp. at 1–2; Mem. in Opp'n at 2. Decedent was not survived by any living parents or natural-born children. *See* Compl. ¶¶ 19–20. However, Decedent *was* survived by an adult step-son (Harrelson) and several adult siblings (the Defendant Siblings). Mem. in Supp. at 1; Mem. in Opp'n at 2.

**\*2** The Policy stipulated that, if there was no named beneficiary, the proceeds would be paid "to one of the classes of survivors in the following order, [Decedent's]: 1. Current Spouse; 2. Surviving children in equal shares; 3. Parents in equal shares; 4. Siblings in equal shares; 5. Estate." Compl. Ex. A at 18 [DE–1–2]; Mem. in Supp. at 5–6; Mem. in Opp'n at 13. On April 2, 2009, Plaintiff advised all parties now defendants to this action that "the proceeds for the basic life and accidental [would] be evenly divided between Charles DuBoise's siblings, and the dependent rider benefit [would] be paid to Charles' estate," unless there were objections. Compl. ¶ 24. The Defendants Harrelson objected to the proposed payment plan, and alerted Plaintiff of their objection via a letter dated April 23, 2009. *Id.* ¶ 25. Subsequently, Plaintiff deposited the Policy's funds into the Court registry and has been dismissed from this case. *See* June 9, 2010 Order [DE–32]. However, the Defendants Harrelson and the Defendant Siblings continue to each contend that they are the rightful beneficiaries of the proceeds of the Policy, and, as such, remain adversarial defendants in this action. Compl. ¶¶ 25–27.

### DISCUSSION

**1. The Defendant Siblings' motion for summary judgment**
Summary judgment is appropriate pursuant to Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, *Anderson,* 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)). Summary judgment should be granted in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." *Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 214 (4th Cir.1993). If a non-moving party, in opposing summary judgment, does not provide evidence on which a factfinder could conceivably rely to rule in the non-moving party's favor, summary judgment is appropriate. *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984).

Here, the parties do not appear to dispute the facts. Therefore, the Court will focus its analysis on whether the Defendant Siblings, as the moving parties, are entitled to judgment as a matter of law. The parties differ in their interpretations of the law governing distribution of the proceeds of the Policy, and, accordingly, the Court must clarify the application of that law.

**\*3** The Defendant Siblings agree with Plaintiff's proposed payment plan, which would award them the proceeds of the Policy as members of the class "siblings." They contend that this is the proper result because ERISA requires distribution to the first class with surviving members in accordance with the plan documents, and that any conflicting state law would be preempted. However, the Defendants Harrelson make two objections to Plaintiff's proposed payment plan. First, they argue that a conflicting state law, North Carolina's Revised Simultaneous Death Act ("the Act"), N.C. Gen.Stat. §§ 28A–24–1 to –8, is *not* preempted by ERISA and should apply to award Harrelson the proceeds as the sole heir to the estate of DuBoise, who under the Act would have been Decedent's "current spouse." Second, they argue that, even if the Act *is* preempted by ERISA, Harrelson is either the rightfully named beneficiary of the Policy or a member of the class "surviving children" under the plan documents, and should still receive the proceeds of the Policy before the Defendant Siblings. Accordingly, each of these arguments will be addressed in turn.

**a. The Defendants Harrelson's argument that the Act is not preempted by ERISA**
The Defendants Harrelson argue that Harrelson would receive the proceeds of the Policy were the Act to apply.

© 2016 Thomson Reuters. No claim to original U.S. Government Works. 2

Mem. in Opp'n at 8; *see also,* Mem. in Supp. at 5 (wherein the Defendant Siblings appear to concede the same). The Act provides, in relevant part, that "[i]f the language of the governing instrument disposes of property in such a way that it is to be distributed to the member or members of a class who survived an individual, each member of the class will be deemed to have survived that individual by at least 120 hours unless it is established by clear and convincing evidence that the individual survived the class member or members by at least 120 hours." N.C. Gen.Stat. § 28A–24–2(c). According to the Defendants Harrelson, the Act's 120–hour survivorship requirement should apply to create a legal fiction whereby DuBoise would be deemed to have survived Decedent—even though she factually predeceased him by approximately six hours—and allow her to be included in the class "current spouse," which precedes the class "siblings" in the Policy's plan documents. Therefore, the Defendants Harrelson argue that Harrelson should then receive the proceeds of the Policy as the sole heir to the estate of DuBoise. Mem. in Opp'n at 8. To the contrary, the Defendant Siblings contend that ERISA preempts the Act and requires strict adherence to the order of beneficiaries in the plan documents. Therefore, because Decedent was factually a widower at the time of his death and had no "current spouse," they argue that they, as members of the next class with surviving members, "siblings," should receive the proceeds of the Policy. Mem. in Supp. at 5.

ERISA provides that its provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any [non-exempt] employee benefit plan." 29 U.S.C. § 1144(a). The parties agree that the Policy is governed by ERISA. Mem. in Supp. at 3; Mem. in Opp'n at 3. Here, the provision of ERISA in question is its directive that plan administrators provide benefits to survivors "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). This clause operates to create a conflict between application of the Act and ERISA because, while both would utilize the claim provisions to award the proceeds of the Policy to the first class with surviving members, under the Act the class "current spouse" would be that class and under ERISA it would be the class "siblings."

**\*4** The Supreme Court has held that ERISA preemption of state laws is "clearly expansive" and that any state law which has "a connection with or reference to such a plan" will be preempted. *Egelhoff v. Egelhoff ex rel. Breiner,* 532 U.S. 141, 146–47 (2001) (citations omitted). In *Egelhoff,* the decedent's children by a previous marriage claimed that they, as opposed to the decedent's second ex-wife, were the proper beneficiaries of the proceeds of the decedent's life insurance policy. Although the ex-wife was still listed as the named beneficiary at the time of the decedent's death, the children cited a Washington state statute which automatically revoked an individual's beneficiary status upon divorce from the insured. *Id.* at 144–45. The Supreme Court, ruling in favor of the ex-wife, held that ERISA preempted the Washington statute because the statute had "an impermissible connection with ERISA plans," and that, because "[t]he statute [bound] plan administrators to a particular choice of rules for determining beneficiary status," its application would force administrators to "pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents." *Id.* at 147. In so doing, the *Egelhoff* Court found that application of the state law implicated an area of core ERISA concern and impermissibly conflicted with ERISA's dictate that benefits be distributed according to the terms of the plan documents. *Id.* Similarly, the Court found that, "unlike generally applicable laws regulating 'areas where ERISA has nothing to say,' ... this statute governs the payment of benefits, a central matter of plan administration." *Id.* at 147–48 (citation omitted). In addition, the Court also expressed concern that if the conflicting state statute were *not* preempted, it would disrupt ERISA's goal of "nationally uniform plan administration," would burden plan administrators by requiring them to "master the relevant laws of 50 states," and would "undermine the congressional goal of minimiz[ing] the administrative and financial burden[s] on plan administrators." *Id.* at 148–150.

Here, though the necessity of addressing a conflict between ERISA and a simultaneous death act appears to be an issue of first impression, the Court finds that ERISA applies broadly to preempt the Act. The Act has "a connection with or reference to" an ERISA plan because application of the Act as suggested by the Defendants Harrelson would change the beneficiary in conflict with the express language of the plan documents. Similarly, as in *Egelhoff,* applying the Act would "bind plan administrators to a particular choice of rules for determining beneficiary status" and "pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents." *Id.* at 147; *see also,*

e.g., *McMillan v. Parrot,* 913 F.2d 310, 311 (6th Cir.1990) ( "The designation of beneficiaries plainly relates to these ERISA plans, and we see no reason to apply state law on this issue."). Moreover, the various state adoptions of simultaneous death acts are not entirely uniform. If these varying acts escaped ERISA preemption, their application could conceivably disrupt "nationally uniform plan administration" and increase administrative and financial burdens in opposition to the goals of ERISA. Therefore, the Court finds that, as a general matter, ERISA preempts the Act. [1] Nevertheless, the Defendants Harrelson make several arguments as to why ERISA preemption, even if generally applicable, should *not* apply in the instant case.

**\*5** First, the Defendants Harrelson contend that the Act "by its express terms governs insurance," and that therefore, it should not be preempted by ERISA because of ERISA's insurance "savings clause." Mem. in Opp'n at 5–8. ERISA's insurance "savings clause" excludes from preemption "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).

Though the Defendants Harrelson are correct that ERISA's insurance "savings clause" periodically applies to exclude state laws from preemption, the Supreme Court has stated that "a state law must be 'specifically directed toward' the insurance industry in order to fall under ERISA's savings clause [and that] laws of general application that have some bearing on insurers do not qualify." *Kentucky Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329, 334 (2003) (citation omitted). Therefore, the Court must consider whether the Act is "specifically directed toward" the insurance industry or merely has "some bearing" on insurers.

The Act defines a "governing instrument" as a "deed, will, trust, insurance or annuity policy, account with a POD designation, pension, profit sharing, retirement, or similar benefit plan, instrument creating or exercising a power of appointment or a power of attorney, or a dispositive, appointive, or nominative instrument of any similar type." N.C. Gen.Stat. § 28A–24–1(2). Clearly, insurance policies are only one of the many different types of instruments that can be affected by the Act, and, as such, the Court cannot say that the Act is "specifically directed toward" the insurance industry, but instead appears to only have "some bearing" on insurers. [2] Moreover, ERISA explicitly states that it is designed to preempt employee benefit plans generally, and the Court finds that ERISA's articulated definition indicates that life insurance policies were contemplated as a common type of such employee benefit plans. *See* 29 U.S.C. § 1002(3) (defining "employee benefit plan" as an "employee welfare benefit plan"); 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan" as a plan established "for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... benefits in the event of sickness, accident, disability, death or unemployment"). Therefore, for the foregoing reasons, the Court finds that ERISA's insurance "savings clause" does not apply to exempt the Act from ERISA preemption.

Next, the Defendants Harrelson attack the Defendant Siblings' reliance on *McCurtis ex rel. Love v. Life Ins. Co. of N. Am.,* 849 F.Supp. 1141 (S.D.Miss.1994), for the proposition that the Act is preempted by ERISA and instead argue that it supports their argument that the Act should *not* be preempted. Mem. in Opp'n at 6. In *McCurtis,* a mother, father, son, and daughter all died in an automobile accident. *McCurtis,* 849 F.Supp. at 1142. The mother's ERISA plan insured not only her life, but also listed the father and son as primary beneficiaries and the daughter as a contingent beneficiary. *Id.* at 1143 n. 3. After the accident, an individual who was not a previously known member of the family filed a paternity suit and was determined to be an illegitimate child of the father. *Id.* at 1143. This child, the plaintiff in *McCurtis,* argued that Mississippi's simultaneous death act applied because the mother, father, son, and daughter had died simultaneously, and that, with all named beneficiaries dead, she should be the beneficiary of the insurance proceeds as the only heir of the father and son. In response, the estate of the mother argued that ERISA preempted the Mississippi act because application of the act would impermissibly affect the employee benefit plan, to which the plaintiff responded that the statute "regulated insurance" and thus would not be preempted because of the ERISA savings clause. *Id.* at 1144.

**\*6** Ultimately, though it was implicated, the *McCurtis* court did not decide the case on the preemption issue. Instead, the court found dispositive the fact that the mother had briefly factually outlived the other parties according to witnesses' testimony that only the mother, and not the father, son, or daughter, was still alive and

struggling when they arrived on the scene. However, the court did reason that, even if the Mississippi act was *not* preempted, the simultaneous death act implicated in *McCurtis* did not contain a 120–hour survivorship requirement and the fact that the mother was found to live even a few moments past the beneficiaries was necessarily dispositive. *Id.* at 1144–46. By contrast, here, the Court notes that the Act does contain a 120–hour survivorship requirement. In addition, the Court also notes that, while the Defendants Harrelson point to the fact that the *McCurtis* court did not decide the question on the basis of ERISA preemption, in quoting the court's reasoning, the Defendants Harrelson omitted a key clause of the relevant sentence: "While the court assumed in the preceding discussion, for the sake of argument, that Mississippi's Simultaneous Death Law was exempt from ERISA preemption, *the court considers it likely that this law is preempted, though* the court need not finally resolve the issue. *However, if, as the court is inclined to hold, preemption does apply, the result would be the same.*" *McCurtis,* 847 F.Supp. at 1146–1147 (emphasis added to words omitted by the Defendants Harrelson); *see also,* Mem. in Opp'n at 6. The omitted clause indicates that, contrary to what the Defendants Harrelson suggest, the court was leaning toward a finding that ERISA preempted the Mississippi act but did not deem a decision on the matter necessary to adjudicate the case. Therefore, for the foregoing reasons, the Court rejects the Defendants Harrelson's suggestion that *McCurtis* should lead the Court to find that the Act should not be preempted.

Next, the Defendants Harrelson argue that, because ERISA does not define "survivorship" and the Act does, a survivorship requirement should be read into the Policy and the Act should not be preempted. Mem. in Opp'n at 8–10. In support of this proposition, they reference an unpublished opinion from Washington State, *Estate of Morgan v. Estate of Morgan,* 2004 WL 500860 (Wash.Ct.App. Mar. 15, 2004). In *Estate of Morgan,* a husband and wife were murdered. *Estate of Morgan,* 2004 WL 500860, at * 1. Although the initial death certificates ruled their deaths to have been simultaneous, the families of the husband and wife subsequently engaged in a protracted legal battle regarding which one had outlived the other in an attempt to collect the proceeds of the wife's employee stock ownership program ("ESOP"), which had named the husband as the primary beneficiary and the wife's family as the secondary beneficiaries. *Id.* at \* \*1–2. The *Estate of Morgan* court ultimately found that the plan administrator had not erred in awarding the ESOP benefits to the wife's family members based on the simultaneous death certificates, due to an ERISA dictate that plan administrators' decisions are not to be disturbed absent an abuse of discretion. *Id.* at \* \*5–6. However, in so doing, the court did discuss the fact that the simultaneous death act in question would have required that a beneficiary survive a decedent by 120 hours in order to receive "non-probate assets with a governing instrument," and that, since the parties had died at most a few minutes apart and the ESOP was such an asset, the wife's family members would have been the proper beneficiaries of the proceeds under the act regardless. *Id.*

**\*7** The Court acknowledges that *Estate of Morgan* presented a somewhat similar conflict to the one at issue in the instant matter. However, importantly, in *Estate of Morgan,* the court also suggested that reading a 120–hour survivorship requirement into the ESOP would not cause a conflict with ERISA because, unlike in *Egelhoff* the state law would not "unilaterally bind [ ] the plan administrators to a particular choice of rules to determine beneficiaries ... [but] merely provide[ ] a needed definition for 'simultaneous death' and specif[y] what would happen when a beneficiary failed to survive a participant of a benefit plan." *Id.* at \*4 n. 8. Therefore, reading a 120–hour survivorship requirement into the ESOP did not change the result, whereas here, application of the Act *would* change the result and bind the plan administrator. As a result, the Court finds that ERISA preemption is more appropriate in the case at bar than it would have been in *Estate of Morgan* and rejects the Defendants Harrelson's suggestion to the contrary.

Finally, the Defendants Harrelson argue that, because the Act does not conflict with the purpose of ERISA, the Court should incorporate North Carolina's 120–hour survivorship requirement into federal common law, once again because ERISA does not define "survivorship." Mem. in Opp'n at 10–13.

The Fourth Circuit has stated that "federal courts should fashion federal common law only when 'necessary to effectuate the purposes of ERISA,' or because [ERISA] fails to address a certain issue." *Jenkins v. Montgomery Indus., Inc.,* 77 F.3d 740, 743 (4th Cir.1996) (quoting *Singer v. Black & Decker Corp.,* 964 F.2d 1449, 1452 (4th Cir.1992)). Although it is true that ERISA does not explicitly define "survivorship," the Defendants

Harrelson have made no showing that incorporating the Act into federal common law would be necessary to further the purposes of ERISA. In addition, the fact that, as discussed above, incorporation of such a requirement would arguably *frustrate* the purposes of ERISA leads to Court to decline to create federal common law to accommodate the application of the Act in the manner suggested by the Defendants Harrelson.

In sum, the Court finds that ERISA preemption applies generally, that the Act should be preempted because its application leads to a result that conflicts with the ERISA directive of distributing benefits in accordance with the plan documents, and that the Defendants Harrelson's arguments to the contrary are without merit.

### b. The Defendants Harrelson's argument that Harrelson is either the named beneficiary of the Policy or a member of the class "surviving children"

The Defendants Harrelson also argue that, even if the Act is preempted by ERISA, Harrelson is entitled to the proceeds of the Policy for two additional reasons: (1) he is the rightfully named beneficiary of the Policy; or (2) he is a member of the class "surviving children" under to the plan documents, and should receive the proceeds of the Policy before the class "siblings."

### i. Harrelson as the rightfully named beneficiary of the Policy

**\*8** The Defendants Harrelson argue that Harrelson is entitled to the proceeds of the Policy because he is the rightfully named beneficiary. Mem. in Opp'n at 13–18. The parties do not dispute that there is no explicitly named beneficiary in the Policy. However, prior to enrolling with Plaintiff, Decedent had been insured under a group life insurance policy provided by GE Group Life Assurance Company ("GE"), a company wholly separate from Plaintiff, and on October 29, 2002, Decedent had signed a change of beneficiary form that designated "Joyce DuBoise, wife" as the primary beneficiary and "Ricky Harrelson, son" as the contingent beneficiary of that policy. The Defendants Harrelson argue that because Decedent never named a beneficiary for the Policy and the earlier GE policy's change of beneficiary form was in the possession of his employer during the change in providers, the GE plan's designation of beneficiaries should control. *Id.* at 13.

At the outset, the Court notes that Defendants Harrelson have cited no case law in support of their proposition that Plaintiff was required to incorporate the GE change of beneficiary form into its contract with decedent or that this would have happened automatically and the Court has been unable to independently locate such authority. However, the North Carolina Supreme Court *has* held that the terms of separate contracts with different insurance companies have no effect on each other, *Gaston County Dyeing Mach. Co. v. Northfield Ins. Co.,* 524 S.E.2d 558, 566 (N.C.2000), and that "[o]ne may not assume that a new insurance contract of any kind will conform to the terms of a prior policy of the same type," *Setzer v. Old Rep. Life Ins. Co.,* 126 S.E.2d 135, 140 (N.C.1962). It appears to the Court that the GE change of beneficiary form was an addition to a separate contract with a different insurance company, the terms of which were not intended to have any bearing on the contract between Decedent and Plaintiff. Therefore, the Court finds that Harrelson is not the rightfully named beneficiary of the Policy because no beneficiary was ever chosen by Decedent, and the change of beneficiary form from 2002, executed with a separate insurance company, does not operate to alter that outcome.

### ii. Harrelson as a member of the class "surviving children"

The Defendants Harrelson argue that Harrelson is a member of the class "surviving children" under the plan documents, and that therefore he should receive the proceeds of the Policy before the class "siblings." To that end, the Defendants Harrelson cite several sources of authority in support of a proposition that the word "children" should be interpreted to include stepchildren and that, therefore, Harrelson is a member of the class "surviving children." Mem. in Opp'n at 14–16. To the contrary, the Defendant Siblings cite to a long history of case law and statutes in support of their position that the ordinary meaning of the word "children" in North Carolina and its proper interpretation in this case should exclude stepchildren, and thus Harrelson. Mem. in Supp. at 5–9.

**\*9** First, the Defendants Harrelson argue that the word "children" generally should be interpreted to include stepchildren. Mem. in Opp'n at 14. To the contrary, the Defendant Siblings argue that from the time of English common law, the word "children" has been defined as a parent's lineal descendants, and that North Carolina's statutory scheme has incorporated this definition without

alteration. Therefore, because Harrelson was never adopted by Decedent and is not related to him by blood, the Defendant Siblings argue that he is not his "child" by law. Mem. in Supp. at 6–8.

North Carolina courts have not been silent on the issue of whether stepchildren are children under the law. For example, the North Carolina Court of Appeals has held that "[t]he relationship between stepparent and stepchild does not of itself confer any rights or impose any duties upon either party." *Moyer v. Moyer,* 471 S.E.2d 676, 678 (N.C.Ct.App.1996) (holding that even an *in loco parentis* stepfather does not have a duty to continue support after the mother dies or is divorced). Similarly, the North Carolina Supreme Court has long held that when two parents die, their common children receive the whole of the mother's property and the children born unto the husband with another woman receive nothing, *In re Wall's Will,* 5 S.E.2d 837, 837 (N.C.1939) (holding that "the 4 children of the husband were not of the blood of the testatrix"), and that in order for a stepchild to become a lineal descendant, adoption of that stepchild is required, *In re Estate of Edwards,* 343 SE.2d 913, 919 (N.C.1986) ("[Stepchildren] became lineal descendants of [the father] upon adoption because they became in law his children."). In addition, the North Carolina statutes controlling intestate succession have defined "lineal descendants" since 1960 as "all children of such person and successive generations of children of such children," N.C. Gen.Stat. § 29–2, and do not mention stepchildren at all, *see* N.C. Gen.Stat. §§ 29–1 to 29–30. Though there are certain North Carolina statutes in which stepchildren are considered to be in the same class as blood-related and adopted children,[3] the North Carolina Supreme Court has explicitly distinguished these types of circumstances from intestate succession. *Ingram v. Johnson,* 133 S.E.2d 662, 665 (N.C.1963) ("[The Inheritance Tax exemption] ... is of course limited to the children of a natural child, because a stepchild does not, under our statutes of descent and distribution, succeed to the estate of his stepparent. A stepchild can take only by will."). Therefore, given the long and consistent treatment of stepchildren in the context of intestate succession in North Carolina, the Court agrees with the Defendant Siblings that the word "children" would generally be interpreted so as to exclude stepchildren, and therefore Harrelson.

Next, the Defendants Harrelson argue that a Dependent Insurance Rider ("the Rider") added to the Policy between Decedent and Plaintiff is the only place in the contract that defines the term "child" and that therefore it requires that Harrelson be included in the class "surviving children." Mem. in Opp'n at 15. To the contrary, the Defendant Siblings argue that the Rider does not cover Harrelson because he is an adult and was not dependent on Decedent for support at the time of the accident. Mem. in Supp. at 9.

 **\*10** The Court finds that the Rider covers a class that includes Decedent's own children, stepchildren, foster children, and any other who "depend[s] upon the Insured for support," and appears to have been included to insure dependents. *See* Compl. Ex. 1 at 33–36. Despite the fact that the question of whether Harrelson could have been included in the class of "children" in the Rider is a separate issue from whether he could be included in the class of "children" in the claim provisions, the Defendants Harrelson ask the Court to extrapolate the broad class of "children" used in the Rider to the claim provisions and alter it to remove the requirement of dependence. The Court declines to accept such an invitation. Harrelson was 19 years old at the time of the accident, and was not dependent on Decedent for support. Therefore, although at one point Harrelson may have been covered by the Rider, it does not appear that he was a "child" under the Rider at the time of Decedent's death because he did not depend on Decedent for support. *See* Mem. in Supp. at 9 ("Defendant Harrelson does not argue that he even qualifies as a 'Dependent' ... [and] cannot because he is an adult over the age of 19 and was not dependent on the Decedent for support.") Accordingly, the Court finds the Defendants Harrelson's argument that the word should be interpreted more broadly to be without merit.

Next, the Defendants Harrelson argue that, because the Policy does not define how the word "children" should be used in the claim provisions, contract interpretation principles should be employed in order to deal with this ambiguous term. Mem. in Opp'n at 15–16. To the contrary, the Defendant Siblings argue that there is nothing in the contract that indicates that the word "children" in the claim provisions should be given anything other than its ordinary meaning. Mem. in Supp. at 9.

The Defendants Harrelson are correct to argue that contracting parties are generally free to define the terms of their agreement as they see fit. However, the Court finds that the level of ambiguity that must exist before

employing the contract interpretation principles suggested by the Defendants Harrelson is not present in this case. As discussed previously, the traditional meaning of "children" in the context of inheritance excludes stepchildren, and applying the Defendants Harrelson's interpretation would require accepting that the parties intended a definition contrary to well-settled law and practice in a standard form contract. "Policies of insurance, like other contracts, must receive a reasonable interpretation, consonant with the apparent object and plain intent of the parties." *Parker v. State Capital Life Ins. Co.,* 130 S.E.2d 36, 38 (N.C.1963). To that end, Plaintiff had an opportunity to act in conformity with the interpretation of the claim provisions argued by the Defendants Harrelson by reading the Policy to include Harrelson in the class of "surviving children," and chose not to. The only evidence provided by the Defendants Harrelson which suggests a contrary intention on the part of Decedent and Plaintiff is the Rider, which the Court finds to not be controlling as previously discussed. Accordingly, the Court finds that the word is not ambiguous enough to utilize the clarifying principles of contract interpretation offered by the Defendants Harrelson.

 **\*11** Finally, the Defendants Harrelson cite a definition of "child" from Black's Law Dictionary to further their argument, namely: "The term 'child' or 'children' may include or apply to: adopted, after-born, ore [sic] illegitimate child; step-child; child by second or former marriage; issue." Mem. in Opp'n at 14 (citing Black's Law Dictionary, 5th ed.1979). However, the Court notes that this definition appears to be from an expired edition of Black's Law Dictionary which does not contextualize the terms; in fact, the publication's definition of "children" was later changed .[4] Furthermore, the treatment of "children" in North Carolina statutes and case law is far more compelling to the Court than any edition of Black's Law Dictionary. Therefore, the Court finds the Defendants Harrelson's argument that the dictionary definition supports the inclusion of Harrelson in the class "surviving children" to be without merit.

In sum, given the consistent historical approach to the classification of stepchildren in North Carolina, the intent of the Rider, the principle that words in contracts should be given their ordinary meaning, and the behavior of Plaintiff, the Court finds that it would be unreasonable to interpret the term "children" to include Harrelson.

Accordingly, the Court finds that Harrelson is not a member of the class "surviving children" under the plan documents, and that therefore he is not entitled to receive the proceeds of the Policy before the class "siblings" on that ground.

For all the foregoing reasons, the Court finds that no genuine issue of material fact exists and that the Defendant Siblings, as the moving parties, are entitled to judgment as a matter of law. Accordingly, the motion for summary judgment is **GRANTED.**

### 2. The Defendants Harrelson's motion to amend/correct answer

Pursuant to Federal Rule of Civil Procedure 15, with regard to motions to amend, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' " *Foman v. Davis,* 371 U.S. 178, 182 (1962); *see also,* Fed.R.Civ.P. 15(a)(2); *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir.1999). Here, the Defendants Harrelson filed a motion to amend/correct answer which sought to amend their answer to allege the affirmative defense of release. The Defendants Harrelson assert that, during discovery, they became aware of the existence of a "general RELEASE of all claims"[5] (hereinafter "the Release") signed by the Defendant Siblings, and that therefore their answer should be amended and the Defendant Siblings' claims to the Policy should be dismissed in favor of their own. Mot. to Amend/Correct Answer at 1–2 [DE–57]. In response, the Defendant Siblings argue that the Defendants Harrelson's motion to amend/correct answer is (1) the result of inexcusable delay, (2) unduly prejudicial, (3) interposed in bad faith, and (4) futile. Mem. in Opp'n to Mot. to Am. Answer at 3–10[6] [DE–61 & 61–1].

 **\*12** First, the Defendant Siblings argue that the motion to amend/correct answer is untimely and the result of inexcusable delay. Noting that the preliminary motions deadline was August 12, 2010, they also contend that the motion is untimely because the Defendants Harrelson possessed a copy of the Release from October 12, 2010 onward and failed to even mention the defense of release

until February 3, 2011. Mem. in Opp'n to Mot. to Am. Answer at 4–5.

Next, the Defendant Siblings argue that allowing the motion to amend/correct answer at this juncture would be unduly prejudicial. To that end, they contend that the Defendants Harrelson's attempt to raise a completely new legal theory after discovery has closed and a motion for summary judgment has been fully briefed would require further discovery of the parties involved in the wrongful death claim to determine their intent in signing the Release and that, because the Defendants Harrelson have failed to file a memorandum in support as required by Local Rule 7.1(d), it is impossible to know how they intend to legally support their position. *Id.* at 5–6.

Next, the Defendant Siblings argue that the motion to amend/correct answer is interposed in bad faith and for purposes of delay. Citing the late stage of this litigation, counsel for the Defendants Harrelson's consistently late filings, and the fact that the Defendants Harrelson have failed to file a cross-motion for summary judgment, the Defendant Siblings contend that the motion to amend/correct answer was filed with dilatory intent. *Id.* at 6–7.

Finally, the Defendant Siblings argue that the proposed amended answer is futile. The Defendant Siblings contend that the death of Decedent gave rise to two distinct causes of action—the contract claim under the Policy at issue here and a wrongful death claim against the driver of the other vehicle, insured by a separate insurance company—and that the Release applies only to issues arising out of the wrongful death claim and would not include the completely separate contract claim regarding the Policy. *Id.* at 3, 7–10. More specifically, they argue that:

> The apparent argument of the Defendants Harrelson is that the document settling the wrongful death claim, which is signed by the personal representative of the Decedent (not a party to this action), which releases Peak and the drivers of the vehicle which caused the accident (none of whom are parties to this action), somehow results in the forfeiture of the Defendant Siblings' right to the proceeds due under the completely separate life insurance policy *and vests them in Defendants Harrelson.* And opposing counsel would have the Court believe that to be the legal result even though the Plaintiff in this action—the insurer whose policy proceeds are at issue—never raised this 'defense' on its own behalf, ...

*Id.* at 3–4 (emphasis in original). They also note that, in quoting the Release, the Defendants Harrelson have omitted portions which clarify its intent, that the Release as a whole clearly indicates that it was intended to release only the other insurance company and the tortfeasors from liability, and that neither Plaintiff nor the Defendants Harrelson are mentioned in the Release. *Id.* at 8–10.

**\*13** Undue delay "accompanied by futility or prejudice to the non-movant" is a sufficient reason for denial of a motion to amend a pleading. *HealthSouth Rehabilitation Hosp. v. Am. Nat'l Red Cross,* 101 F.3d 1005, 1010 (4th Cir.1996). The Court finds that the Defendants Harrelson's motion to amend/correct answer is, at the very least, both the result of undue delay and futile. Therefore, the Court need not consider whether the motion is also unduly prejudicial and/or interposed in bad faith.

First, the Court finds that the motion to amend/correct answer is the result of undue delay. With regard to their motion's timeliness, the Defendants Harrelson have argued that their February 3, 2011 filing of the motion was less than 30 days after the close of formal discovery in the matter—during which they discovered the Release —as well as before the dispositive motions deadline of February 12, 2011. Furthermore, counsel for the Defendants Harrelson have cited "staffing problems" as a contributing factor to the delay in filing the motion. Mot. to Amend/Correct Answer at 1–2. However, the Court notes that the Defendant Siblings are correct that any type of motion to amend is not a dispositive motion. *See, e.g., Stonecrest Partners, LLC v. Bank of Hampton Roads,* No. 7:10–CV–00063–FL, 770 F.Supp.2d 778, 782–83, (E.D.N.C.2011). Since the Defendants Harrelson have provided no sufficient explanation for the period of delay from either the August 12, 2010 preliminary motions deadline *or* the October 12, 2010 discovery of the existence of the alleged defense, beyond an unconvincing assertion of "staffing problems," the Court finds that the motion to amend/correct is untimely. *See, e.g., Naden v. Saga*

*Software, Inc.,* 2001 WL 672071, at *1 (4th Cir. June 15, 2001) (affirming district court's finding that a motion to amend filed four months after the scheduling order deadline was untimely).

In addition, the Court finds that the Defendants Harrelson's motion is without merit, and therefore futile. The Defendants Harrelson have cited absolutely no legal authority for their proposition that the Release applies to preclude the instant dispute concerning the Policy. Instead, they simply have asked the Court to believe that a release signed by individuals not party to this action,[7] which would have primarily benefited Plaintiff, was intended to have such broad applicability so as to not only preclude a contract claim unrelated to the wrongful death claim but to somehow shift the benefits of that released claim to the Defendants Harrelson, also non-parties to the Release. Such a result simply does not logically follow. To the contrary, the Court finds the legal authority cited by the Defendant Siblings with regard to contract interpretation to be sound, and sees no reason to adopt the Defendant Harrelson's feckless position. In addition, the Court is inclined to agree with the Defendant Siblings that the Defendants Harrelson have selectively quoted the release in their motion to amend/correct answer, omitted portions which clarify its intent, that the Release as a whole clearly indicates that it was intended to release only the other insurance company and the tortfeasors from liability, and that neither Plaintiff nor the Defendants Harrelson are mentioned in the Release.

**\*14** For the foregoing reasons, the Court finds that the motion to amend/correct answer is the result of undue delay and futile, and therefore improper. Accordingly, the Defendants Harrelson's motion to amend/correct answer is **DENIED.**

## *CONCLUSION*

For the foregoing reasons, it is **ORDERED** that the motion for summary judgment of Defendants Linnie Bell Braswell, Dillon DuBoise, Orbie Lee DuBoise, Paul DuBoise, Kathryn Hinson, Kay Nealey, and Mary Stevens [DE–54] be **GRANTED.** The motion to amend/correct answer of Defendants Richard Wayne Harrelson and the Estate of Joyce Gail Harrelson DuBoise [DE–57] is **DENIED.**

Counsel for Defendants Linnie Bell Braswell, Dillon DuBoise, Orbie Lee DuBoise, Paul DuBoise, Kathryn Hinson, Kay Nealey, and Mary Stevens is further **DIRECTED** to file a motion for distribution of the funds deposited by Plaintiff with the Court within ten (10) days from the date of this Order.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 4544047, 52 Employee Benefits Cas. 2320

Footnotes

1     In addition, the Court notes that in one of the lower court opinions in *Egelhoff,* issued by the Washington Court of Appeals, the Washington state statute at issue was described by the court as presenting issues similar to those that would be presented by the conflict between ERISA and a simultaneous death act. *See Matter of Estate of Egelhoff,* 968 P.2d 924, 927 (Wash.Ct.App.1998) ("Both the [Uniform Simultaneous Death Act] and [the Washington statute] operate, under certain circumstances, to treat the holder of life insurance as surviving the beneficiary as a matter of law."). Though that court's holding was ultimately reversed by the Supreme Court, the Court nonetheless finds the comparison instructive.

2     *See also, e.g., Life Ins. Co. of N. Am. v. Camm,* 2007 WL 2316480, at *3 n. 2 (S.D.Ind. Aug. 6, 2007) (holding that Indiana slayer statute was not specifically directed toward insurance industry). Though the Court does recognize that slayer statutes implicate further issues not raised by simultaneous death acts, their degree of connection with the insurance industry is comparable.

3     For example, the Workman's Compensation Act includes stepchildren in its definition of "children," albeit only if the stepchild is dependent on the decedent for financial support, N.C. Gen.Stat. § 97–2, and there are exceptions under inheritance tax law where stepchildren are considered to be in the same class as blood-related and adopted children, N.C. Gen.Stat. § 105–4(a). *See also,* Mem. in Supp. at 7.

4     The most recent entry for "stepchild" in Black's Law Dictionary reads in relevant part: "A stepchild is generally not entitled to the same legal rights as a natural or adopted child. For example, a stepchild has no right to a share of an intestate stepparent's property." Black's Law Dictionary 272 (9th ed.2009).

5     The release states, in relevant part, that:
> I, Paul Duboise, as Administrator of the Estate of CHARLES DUBOISE, deceased, and as fiduciary representative of all heirs and beneficiaries of CHARLES DUBOISE, deceased, and the heirs and beneficiaries of CHARLES DUBOISE, deceased, remise, release, and forever discharge the said GLORIA MCDUFFIE, JAMES WORLEY AND PEAK PROPERTY AND CASUALTY INSURANCE CORPORATION, their heirs, executors, administrators, personal representatives, beneficiaries, predecessors, underwriters, insurers, successors, directors, officers, employees, agents and assigns, and all other persons, firms or corporations, from any and all claims, demands, damages, actions, causes of action, claims for relief, or suits at law or in equity, of whatsoever kind and nature, which 1 may now have or hereafter have arising out of or in any manner connected with the matter, thing, loss or damage suffered on or before the date of the Release, whether the same be now known to me or not, and particularly to remise and discharge GLORIA MCDUFFIE, JAMES WORLEY AND PEAK PROPERTY AND CASUALTY INSURANCE CORPORATION, their heirs, executors, administrators, personal representatives, beneficiaries, predecessors, underwriters, insurers, successors, directors, officers, employees, agents and assigns, and all other persons, firms or corporations, as herin above set forth, known and unknown, of and from any and all claims, demands, damages, actions, causes of actions, claims for relief, or suits at law or in equity, of whatsoever kind and nature, which I, Paul Duboise, Administrator of the Estate of CHARLES DUBOISE, deceased or as fiduciary representative of all heirs and beneficiaries of CHARLES DUBOISE, deceased, may now or hereafter have arising out of or in any manner connected with the death of CHARLES DUBOISE and the accident and injuries resulting in the eventual death of CHARLES DUBOISE.

       Mot. to Amend/Correct Answer Ex. 1 at 5–6 [DE–57–1].

6     The Defendant Siblings' memorandum in opposition was filed in two parts: the first six pages as DE–61 and the second six pages as Exhibit 1 to that docket entry, DE–61–1. For ease of citation, the Court has chosen to cite to the page numbers used by the Defendant Siblings, rather than those corresponding to the multiple docket entries in CM/ECF.

7     Though Paul DuBoise signed the Release and is one of the Defendant Siblings in this action, the Court notes that in the Release, he signed the Release not on his own behalf but rather on behalf of the estate of Decedent.

---

**End of Document**      © 2016 Thomson Reuters. No claim to original U.S. Government Works.