IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NO. 5:16-CV-913-D

| | |
|---|---|
| FRANCIS X. DE LUCA,<br><br>    Plaintiff,<br><br>    v.<br><br>THE NORTH CAROLINA STATE BOARD OF ELECTIONS; KIM WESTBROOK STRACH, in her official capacity as the Executive Director of the State Board; and A. GRANT WHITNEY, RHONDA K. AMOROSO, JOSHUA D. MALCOLM; JAMES BAKER and MAJA KRICKER, in their official capacities as members of the State Board of Elections,<br><br>    Defendants,<br><br>and<br><br>LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA, NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE, COMMON CAUSE NORTH CAROLINA, KAY BRANDON, SARA STOHLER, HUGH STOHLER, ANTHONY MIKHAIL LOBO, ANNA JAQUAYS, and MICHAEL T. KUYKENDALL, NORTH CAROLINA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,<br><br>    Defendant-Intervenors. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

NOW COMES Plaintiff Francis X. De Luca, by and through undersigned counsel, and submits this memorandum in support of his effort to secure declaratory and injunctive relief in the above-captioned matter.

**I. Introduction**

Plaintiff De Luca makes a narrow request of this Court that does not require the exclusion of a single ballot cast as part of the November 8, 2016 General Election. He simply asks the Court to bar the North Carolina Board of Elections ("the State Board") from certifying the results of the most recent election until all voters can be treated equally under the law[1]. The statutory disjoinder that creates the inequality at issue is well-established and highly prejudicial. It should be able to be solved by the simple passage of additional time before the State Board certifies the election. For the reasons explained below, the Court should grant Plaintiff's motion.

**II.     Background Facts**

**A. This complaint is about a well-known gap in North Carolina election law.** North Carolina law mandates newly-registering voters to be subject to a mail verification process. *See, e.g.,* N.C. Gen. Stat. § 163-82.7. The administration of same-day registration ("SDR") during North Carolina's early voting period creates profound logistical problems that do not currently mesh with the verification mandate by the date of the normally-scheduled State Board canvass and certification of the election. *See, e.g.,* N.C. Gen. Stat. 163-182.5(c)(setting State Board canvass three weeks after election day; *see also* N.C. Gen. Stat. 163-182.15(b)(providing for certifications of election six days after canvass unless protests are pending). The core administrative dilemma has already been distilled and articulated in a May 19, 2015 report by the State Board:

> An individual who registered and voted on the last day of SDR, the Saturday before Election Day, would not even begin the process of mail verification until, at the absolute earliest, the following Monday. It is impossible that the mail verification card could even

---
[1] Plaintiff asked the State Board for the same delay by and through a protest filed with the Board on November 21, 2016 (attached as App. A).

> be delivered to the SDR registrant any earlier than the Tuesday of
> Election Day, much less returned undeliverable to the county
> Board of Elections by 5:00 P.M. the same day. Such an individual
> would therefore appear to be immune to any challenge of his or her
> ballot based upon a lack of a verified mailing address."

*May 19, 2015 Report* at 7 (attached as App. B). The 2015 report found "for the mail verification system to function effectively, more time is needed than the time provided under the SDR system." *Id.* at 6.

Federal Courts have also recognized this disjunction. In his Order digesting the trial of *N. Carolina State Conf. of the NAACP et al. v. McCrory,* Judge Schroeder took note of similar findings in a 2009 memo by former State Board Executive Director Bartlett: "SDR simply failed to provide a sufficient <u>number of days</u> to permit the mailings to run their course to verify same-day registrants." *N. Carolina State Conf. of the NAACP et al. v. McCrory, et al.,* 2016 W.L. 1650774 at 105(rev'd 831 F.3d 204 (4th Cir. 2016)). The District Court went on to survey a wealth of data, State Board memos and reports, and legislative history. The Court found "[t]hese data merely confirm what logic reveals must be the case - SDR's proximity to Election Day, well inside the twenty-five day registration cut-off, simply does not provide a sufficient number of days for the mail verification process to work, and thus effectively frustrates - or negates - North Carolina's process for verifying a voter's residence." *Id.* at 107. The Fourth Circuit did not disturb Judge Schroeder's factual findings about the logistical difficulties of SDR as far as they went. *See N. Carolina State Conf. of the NAACP et al. v. McCrory*, 831 F.3d 204, 237 (4th Cir. 2016). Indeed, the Court of Appeals said of the administrative burdens SDR presents "these concerns are real." *Id.* at 237.

3

### B. The gap dilutes Plaintiff's voting rights.

Judge Schroeder thoroughly analyzed SDR and the impact of the gap using the State Board's. *See* 2016 W.L. 1650774 at 102-111. He found SDR "requires the State to accept the votes of several thousand individuals who failed mail verification." *Id.* at 111. He calculated that 2,361 ballots were counted in the 2012 General Election from SDR registrants that ultimately failed mail verification after Election Day and canvass. *Id. at 108.* Indeed, the May 19, 2015 State Board *Report* identified that same number, charting a voted-but-failed rate of 2.44% out of 96,924 SDR registrants that voted in the 2012 General Election. *Report* at 4. The Fourth Circuit noted similar data from other cycles reflecting that 97% of SDR voters ultimately passed verification[2]. *See N. Carolina State Conf.,* 831 F.3d at 237.

### C. These historical failures stand to be repeated.

Unofficial State Board data on the 2016 General Election suggests over 100,000 SDR registrants voted this cycle. *See* Poucher Aff. at 2 (attached as App. C). As of December 2, it would appear approximately 15,000 SDR registrants remain unverified; at least one county is still involved in the SDR verification process as of December 2. *Id.* at 2-3. The State Board's "master election calendar" available on its web site provides they were originally scheduled to canvass on November 29 and to certify elections on December 5. Due to a series of protests and investigations, these actions have not yet taken place.

### III. Argument

A party seeking a preliminary injunction must establish: (1) that it is likely to succeed on

---

[2] The Court of Appeals was obviously noting this rate with favor on its way to finding, among other things, that failed verification rate issues were not so great as to justify the North Carolina legislature's outright abolition of SDR, as had been done in the broader package of changes to North Carolina election law before that Court in that action. By marked contrast, Plaintiff does not seek the abolition of SDR through this action: he simply wants the State Board to wait to certify until the verification process has run its course.

4

the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *See Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

### A. Plaintiff is likely to succeed on the merits of both claims.

**The NVRA argument.** The National Voter Registration Act of 1993 ("NVRA") sets forth mandatory procedures for state election officials that further goals including protecting "the integrity of the electoral process" and ensuring "that accurate and voter registration rolls are maintained." 52 U.S.C. § 20501(b). In regulating roll maintenance procedures, the NVRA further insists states comply with particularized standards to "conduct a general program that makes a *reasonable* effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" death or change in residence. 52 U.S.C. § 20507(a)(4)(A),(B)(emphasis added). Plaintiff submits a temporally-impossible verification regime such as the one at issue here is inherently unreasonable. History and current data show that if the State Board fails to delay certification until verification is complete then it will almost certainly include invalid votes in its tabulations. Congress takes this issue seriously: the NVRA provides criminal penalties against elections officials that knowingly deprive a state of a fair election by the tabulation of votes known to be false or fraudulent. *See* 52 U.S.C. § 20511(2)(B). These administrative burdens are probably why "[n]early a third of the states offer no early voting." *Ohio Democratic Party v. Husted,* 834 F.3d 620, 623 (6th Cir. 2016).

**The Equal Protection Argument.** "[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds v. Sims,* 377 U.S. 533, 555 (1964). As

5

explained in Section II, above, the State Board has a well-established history of ignoring the voter verification mandate when certifying elections to the benefit of a particular class of late-appearing SDR voters. This nullification stands to occur again this cycle unless the Court acts. *See* Poucher Aff. at 2, 3 (confirming State Board data and a county board reflect verifications still pending for the 2016 General Election). The state cannot justify ignoring the verification requirement against the applicable standard where it dilutes the voting power of properly-verified voters.

Strict scrutiny clearly applies to the claims stated herein because SDR infringes Plaintiff's due process rights, and the relief requested cannot be denied unless the State demonstrates that the statutory framework of SDR as it currently exists is narrowly tailored to serve a compelling interest of the highest order.[3] There is no such interest "of the highest order" here. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993). The determination of whether an interest is compelling "is not to be made in the abstract, by asking whether fairness, privacy, etc., are highly significant values; but rather by asking whether the *aspect* of fairness, privacy, etc., addressed by the law at issue is highly significant." *California Democratic Party v. Jones*, 530 U.S. 567, 584 (2000) (emphasis in original). The "aspect" of fairness at issue in this action cannot be the subject of serious dispute: ensuring that all properly-registered voters in North Carolina are treated equally and that their votes are not diluted.

Furthermore, for an interest to be compelling, the government must be able to substantiate the precise harm at stake. "The state must specifically identify an 'actual problem' in need of

---

[3] This action is not a challenge to state election laws, but rather a request to ensure that the Defendant State Board complies with the NVRA's requirement of a "reasonable effort to remove the names of ineligible voters from the official list of eligible voters" so as not to dilute Plaintiff's (and thousands of other North Carolinians') voting rights. As a result, the *Anderson-Burdick* test does not apply here. Nevertheless, the requested relief would still be warranted if analyzed under the *Anderson-Burdick* framework.

6

solving." *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 799 (2011). "[U]nsubstantiated or speculative claims of harm . . . fall[] short of a compelling interest." *Doe v. Public Citizen*, 749 F.3d 246, 270 (4th Cir. 2014). Under strict scrutiny, "[o]nly the gravest abuses, endangering paramount interest, give occasion for permissible limitation." *Sherbert v. Verner*, 374 U.S. 398, 406 (1963). The State Board cannot demonstrate any precise harm or actual problem that will occur if the requested relief is granted, and there is certainly no government interest at stake that is paramount to ensuring that the votes of the Plaintiff and similarly-situated citizens are not unlawfully diluted.

Even if a compelling interest were present here, SDR as currently implemented by the State Board, without any safeguards to ensure that only verified SDR ballots are counted, does not further any such interest through narrowly-tailored means. There is "no concrete evidence of persuasive force" explaining why the practical solution sought by the Plaintiff – simply ensuring that the State Board only includes verified SDR ballots in the final certified election results – is unworkable. *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 318 (4th Cir. 2013). The lack of narrow tailoring is underscored by the fact that SDR as currently implemented now creates the potential for the State to accept the votes of thousands of individuals who failed mail verification, as noted by Judge Schroeder, the Fourth Circuit, and the State Board itself.

**B. Plaintiff will suffer irreparable harm in the absence of relief.** A citizen has the Constitutional right to participate in elections on an equal basis with other citizens in the jurisdiction. See *Dunn v. Blumstein,* 405 U.S. 330, 336 (1972). The equal protection clause protects the right to vote in both in the right's initial allocation as well as the manner of its exercise. *See Bush v. Gore*, 538 U.S. 98, 104-05 (2000). "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's

7

vote over that of another." *Id.* If the State Board ignores the verification mandate for thousands of SDR voters, Plaintiff and millions of other, already-verified voters will forever lose their right to participate in the 2016 General Election on an equal basis with the special, preferred class of unverified voters created by the Board's arbitrary action. This is an irreparable injury to Plaintiff which no remedy at law can compensate. An injunction barring the State Board from certifying the election until the last-minute SDR voters at issue are verified would prevent this injury.

Plaintiffs in the Northern District of Illinois recently sought to enjoin Illinois' disparate election-day registration scheme in *Harlan v. Scholz* (NDIL 1:16cv07832)(stayed, pending appeal, 7th Cir. 16-3547 (Oct. 4, 2016))(attached as App. D). While the Sixth Circuit has stayed the injunction the district court granted pending appeal, Judge Der-Yeghiayan's point endures and applies to this case: "[t]his court should not be asked to wait until the next election to address this issue of fairness and equality in voters' rights. Ensuring equal protection of voters' rights knows no deadline." *Harlan* Mem. Op. at 9.

### C. The balance of equities is in Plaintiff's favor as well as the public interest.

An injunction against certification until the verification mandate is met and all voters can be treated equally will not cause substantial harm, but rather give life to the verification law. It treats all properly-registered voters equally. Ignoring verification mandates offers some voters a privilege at the expense of millions of verified voters such as Plaintiff. Indeed, we make much the same point as the *Harlan* district court did: "[i]t is in reality the removal of an unfair advantage from some United States citizens in Illinois that levels the election playing field, and is consistent with the Equal Protection Clause." *Harlan* Mem. Op. at 11. This Court should contemplate Plaintiff De Luca's demand for equality in the same fashion.

8

## IV. Conclusion

Plaintiff seeks only that his vote not be diluted by the thousands of SDR ballots that later fail verification but are still counted and certified. Giving the verification process time to run its course would cure this wrong. The Court should act to bar the State Board from certifying until the Board can attest all voters are being treated equally by the inclusion of only verified voters in final counts.

Respectfully submitted, this the 3rd day of December, 2016.

By: /s/ Josh Howard
Josh Howard
NC Bar No. 26902
115 ½ West Morgan Street
Raleigh, NC 27601
(919) 521-5878
Fax: (919) 882-1898
jhoward@ghz-law.com

BOWERS LAW OFFICE LLC
By: /s/ Karl S. Bowers, Jr.
Karl S. Bowers, Jr.*
Federal Bar #7716
P.O. Box 50549
Columbia, SC 29250
(803) 260-4124
Fax: (803) 250-3985
butch@butchbowers.com
*appearing pursuant to Local Rule 83.1(d)

*Attorneys for Plaintiff Francis X. De Luca*

CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing MEMORANDUM through the electronic service function of the Court's electronic filing system, as follows:

Joshua Lawson
Katelyn Love
NC Board of Elections
441 N. Harrington Street
Raleigh, NC 27603

Allison Jean Riggs
Anita S. Earls
Southern Coalition for Justice
1415 West Highway 54, Suite 101
Durham, NC 27707

Irving L. Joyner
P.O. Box 374
Cary, NC 27512

Martha A. Geer
Cohen Milstein Seller & Toll, PLLC
150 Fayetteville St., Suite 980
Raleigh, NC 27601

Leah Kang
Caitlin Swain
1401 New York Ave., NW Ste 1225
Washington, DC 20005

    This the 3rd day of December, 2016.

    /s/   Josh Howard
    Counsel for Plaintiff

10

Case 5:16-cv-00913-D   Document 43   Filed 12/03/16   Page 10 of 10