

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PATRICK HARLAN, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 16 C 7832 |
| ) | |
| CHARLES W. SCHOLZ, et al. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Patrick Harlan's (Harlan) and Plaintiff Crawford County Republican Central Committee's motion for a preliminary injunction. For the reasons stated below, the motion for a preliminary injunction is granted.

## BACKGROUND

In 2014, the Illinois General Assembly passed legislation for a pilot program for Election Day Registration, and the legislation was signed by the Governor. After the 2014 general election, new legislation (SB 172) passed for a permanent Election Day Registration System (EDR) on strict party-line votes in both houses of the General Assembly, with all affirmative votes coming from Democratic legislators

and all "nay" votes coming from Republican legislators. SB 172 was signed into law by the outgoing Democratic Governor. Under the terms of the EDR, counties with a population of 100,000 or more and/or counties with electronic polling books are required to provide voters with the option of registering at any polling place on election day. Counties with a population of 100,000 or less that do not have electronic polling books are not required to provide voters with the option of registering at any polling place on election day. Plaintiffs have provided evidence showing that EDR options such as the polling place registration option significantly increases voter turnout. Plaintiffs contend that, as a result, voter turnout in small counties without electronic polling books will not be properly represented in the elections. Plaintiffs also contend that the EDR will likely have partisan effects, benefitting Democratic candidates who primarily draw their support from counties with populations of 100,000 or more. Harlan is a Republican candidate for the United States House of Representatives in the 17th Illinois Congressional District, which includes one high population county and portions of three other high-population counties and the entirety of ten low-population counties. Plaintiffs have brought this lawsuit to protect the rights of United States citizens in the low-population counties without electronic polling books to ensure that they have the same opportunity to vote as voters in high-population counties. Plaintiffs contend that the EDR violates the equal protection rights of voters in low-population counties without electronic polling books. Plaintiffs request that the court enter a preliminary

injunction ordering Defendants to direct election authorities in all 102 Illinois counties not to implement the EDR option of registration at precinct polling locations. An amicus brief has been filed in this case on behalf of the Action Now Institute, Asian Americans Advancing Justice - Chicago, Change Illinois, Chicago Votes, Common Cause Illinois, The Illinois Coalition for Immigrants and Refugee Rights, and the Illinois Public Interest Research Group (collectively referred to as "AAAJ Parties"). An amicus brief has also been filed by the American Civil Liberties Union of Illinois and other voting rights organizations (collectively referred to as "ACLU Parties"). The court has considered all the arguments made in the Amicus Briefs in ruling on the instant motion.

## DISCUSSION

I. Initial Requirements

A party seeking a preliminary injunction must initially establish: (1) "that absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims," (2) "that traditional legal remedies would be inadequate," and (3) "that its claim has some likelihood of succeeding on the merits." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008); *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661-62 (7th Cir. 2015). If the moving party fails to satisfy any of the above

elements, the court must deny the motion for a preliminary injunction. *Girl Scouts*, 549 F.3d at 1086.

### A. Irreparable Harm/ Inadequate Legal Remedy

Plaintiffs contend that if a preliminary injunction is not granted they will suffer irreparable harm and will have no adequate legal remedy. Plaintiffs have shown that in the upcoming election Illinois citizens in low-population counties without electronic polling books will have their right to vote significantly curtailed in comparison to citizens in high-population counties and counties with electronic polling books. Plaintiffs have shown that Illinois voters will suffer a concrete harm that is much more than speculative. The impairment of that right to vote in the upcoming election and loss of the ability to effectively participate in choosing elected officials cannot be later rectified in this action. It would not be practical for this court to order all elections in Illinois to be redone at the conclusion of this case if Plaintiffs succeed in the instant action. Nor can the impairment of the fundamental and intangible right to vote be quantified in money damages at the conclusion of this case. Plaintiffs have shown that absent the entry of a preliminary injunction certain United States citizens in Illinois will suffer irreparable harm and will lack an adequate legal remedy.

### B. Likelihood of Success on the Merits

Plaintiffs argue that there is a likelihood of success on the merits in this case. The "Constitution and the laws of the United States are the supreme law of the land." *Shelby County, Ala v. Holder*, 133 S.Ct. 2612, 2623 (2013)(quoting U.S. Const., Art. VI, cl. 2). The Supreme Court has referred to the "right to vote" as "one of the most fundamental rights of our citizens."[1] *Bartlett v. Strickland*, 556 U.S. 1, 10 (2009); *Griffin v. Roupas*, 385 F.3d 1128, 1132 (7th Cir. 2004)(stating that there is an implied constitutional right to vote). The 15th, 19th, 24th, and 26th Amendments of the United States Constitution all provide that the rights of citizens of the United States to vote shall not be denied or abridged based on various classifications. The States in this federal system are given "broad powers to determine the conditions under which the right of suffrage may be exercised." *Shelby County, Ala*, 133 S.Ct. at 2623 (internal quotations omitted)(quoting *Carrington v. Rash*, 380 U.S. 89, 91 (1965)). However, the Equal Protection Clause continues to protect the right to vote and "the manner of its exercise." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000)[2]. Voters have "the right to vote on equal terms" and

---

[1] The founding fathers suggested that the right to vote was not only a fundamental right but a sacred right. Samuel Adams stated that a citizen who is voting should remember that the citizen "is executing one of the most solemn trusts in human society for which he is accountable to God and his country." http://foundersquotes.com.

[2] The founders of this nation relied in part on the concept of equality in voting in a democracy as first recorded in Ancient Greece. The casting of ballots in a voting process is seen as early as 490 B.C. in a painting on terracotta cup on which Greek leaders are shown using stones to vote as to whether Ajax or Odysseus should receive Achilles' armor. Ancient Greeks in fact used voting pebbles called ψῆφος (psephos) which were believed to have been dropped into urns to execute a vote. www.getty.edu/art/collection/objects/12078; blogs.getty.edu/iris/voting-with-the-ancient-greeks; Gavin Betts and Alan Henry, Complete Ancient Greek 438 (2010).

"the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Id.*

Under the United States Constitution, the right to equal protection does not belong to any political party or group. The right to equal protection belongs to all United States citizens without regard to their background or political affiliation. The Supreme Court has held that in evaluating "a law respecting the right to vote - whether it governs the voter qualifications, candidate selection, or the voting process," the court should employ the standard set forth in *Burdick v. Takushi*, 504 U.S. 428 (1992). *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 204 (2008)(Scalia, J. concurring). Under that standard, a balancing test is applied to assess whether the burden to voting rights is a severe burden. *Id.*; *Bush*, 531 U.S. at 104-05 (quoting *Reynolds v. Sims*, 377 U.S. 533 (1964) for the proposition that "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise"). A burden is deemed to be a severe burden if it "go[es] beyond the mere inconvenient." *Crawford*, 553 U.S. at 205. A court should "weigh the character and magnitude of the asserted injury to the rights protected by the" Constitution "that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule." *Burdick*, 504 U.S. at 434 (internal quotations omitted)(quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

---

In the instant action, Plaintiffs have provided ample evidence showing that the availability of polling place registration as part of the EDR results in a significant increase in voter turnout. That in turn shows that in a low-population county without electronic polling books there will be a significant decrease in voter turnout. The voters in such counties would thus be at a severe disadvantage under the EDR as it stands in Illinois. The EDR would result in much more than an inconvenience to such voters. The EDR would severely burden their right to vote. Defendants argue that the availability of polling place registration is merely an inconvenience because EDR will still be available in all counties in certain locations other than polling places. However, Defendants and the Amicus Briefs make clear how important the polling place registration option is to voters in Illinois. That in turn shows how important it is that voters in low-population counties without electronic polling books not be denied that option. The polling place registration option is applied in an arbitrary and disparate fashion among low-population counties in Illinois and is not the type of "[o]rdinary and widespread" burden that was considered not to be severe. *Crawford*, 553 U.S. at 205. The Intervening Party argues that the position advocated by Plaintiffs will result in fewer United States citizens in Illinois voting. (Orr Resp. 15). While it may be true that the polling place registration option can assist voters in certain populous counties, that option cannot be provided at the expense of lower population counties, thereby decreasing their political representation in Illinois. The application of this legislation favors the urban citizen

and dilutes the vote of the rural citizen. The Supreme Court has made it clear that legislation cannot "restrict the political participation of some in order to enhance the relative influence of others." *McCutcheon v. Federal Election Com'n*, 134 S.Ct. 1434, 1441 (2014). The magnitude of the impact of the EDR upon voters in low-population counties without electronic voting books will be enormous and Defendants have not provided sufficient justification to support imposing such a hardship on United States citizens in Illinois. Defendants argue that the geographical classifications are necessary for the implementation of the EDR. It is possible for Illinois to implement voting registration laws in a disparate fashion among geographical areas without violating the Equal Protection Clause. *See Griffin*, 385 F.3d at 1132 (stating when considering absentee ballot rules that "unavoidable inequalities in treatment, even if intended in the sense of being known to follow ineluctably from a deliberate policy, do not violate equal protection"). However, at this preliminary stage in these proceedings, Defendants have not provided adequate support for their position in this regard as to the facial classification of the EDR and the disparate effect of its implementation. Defendants and the Amicus Briefs both argue that the EDR promotes that goal in large-population counties. While it is a desirable goal to make the voting process more readily available to United States citizens in Illinois and to encourage them to vote, that goal must apply equally to all United States citizens in Illinois.

Defendants also argue that the EDR merely imposes requirements on certain

Case: 1:16-cv-07832 Document #: 48 Filed: 09/27/16 Page 9 of 13 PageID #:508

counties and does not prohibit any county from employing the EDR. Although the EDR does not technically prohibit low population counties without electronic polling books from instituting the EDR, as Defendants acknowledge themselves, lower population counties have limited resources. (DE 29:7). The de facto effect of the EDR thus is to ensure that persons in certain larger and wealthier counties are provided with EDR options that those in less affluent counties do not have. The Intervening Party explains in its response that Cook County has expended large sums of money to implement the EDR. (Orr Resp. 14). In fairness and equity, such other less affluent counties should not have their representation in elections lessened based on their lack of such funds. The Intervening Party also argues that it will be difficult to change the election registration rules at this juncture close to the elections. Such an argument is not persuasive. This court should not be asked to wait until the next election to address this issue of fairness and equality in voters' rights. Ensuring equal protection of voters' rights knows no deadline. Justice demands that this court act now in order to prevent unfairness in the upcoming elections. Constitutional protections cannot be compromised solely for the purpose of expedience or convenience. The court has balanced all pertinent interests under the *Anderson-Burdick* balancing of interests test. Plaintiffs have thus shown that the EDR as it stands with the polling place registration option severely restricts voters' rights under the *Anderson-Burdick* balancing of interests test.[3] Thus, based on the limited

---

[3] If Harlan were merely bringing the instant action solely to protect his candidacy rights, the rational basis test would be applicable since "candidacy itself is not a fundamental right."

9

Case 5:16-cv-00913-D   Document 43-4   Filed 12/03/16   Page 9 of 13

Case: 1:16-cv-07832 Document #: 48 Filed: 09/27/16 Page 10 of 13 PageID #:509

evidence presented at this early preliminary injunction stage, Plaintiffs have shown a likelihood of success on the merits. When fundamental rights, such as voting, are restricted, the courts generally apply the strict scrutiny standard and the court notes that even under the rational basis test, at this phase of the proceedings, Plaintiffs have presented sufficient evidence to show a likelihood of success on the merits.

## II. Balancing Phase

If the moving party satisfies all of the initial requirements for a preliminary injunction, the court must "proceed[] to the balancing phase of the analysis." *Girl Scouts*, 549 F.3d at 1086. During this phase, the court should balance: (1) the potential harm to the parties, (2) the likelihood of success on the merits, and (3) the public interest. *Id.*; *Turnell*, 796 F.3d at 662. The court should employ "a sliding scale approach: [t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Girl Scouts*, 549 F.3d at 1086 (internal quotations omitted)(quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984)).

### A. Balancing of Harms and Likelihood of Success

Plaintiffs contend that a balancing of the harms favors the entry of a

---

*Judge v. Quinn*, 624 F.3d 352, 361 (7th Cir. 2010).

preliminary injunction. Plaintiffs have shown that a significant number of United States citizens in low-population counties without electronic polling books will be harmed by the EDR. While Defendants and the Amicus Briefs argue that limiting the EDR will reduce the available options for voting in certain populous counties, the unavailability of such an option for citizens in certain counties is not actually a harm. It is in reality the removal of an unfair advantage from some United States citizens in Illinois that levels the election playing field, and is consistent with the Equal Protection Clause. The equal protection under the United States Constitution does not disappear or evaporate just because a legislation might be a benefit to certain United States citizen voters in a certain geographic area. Plaintiffs have shown that a balancing of the harms favors granting the motion for a preliminary injunction. On the consideration of the likelihood of success, Plaintiffs have made a *prima facie* showing that SB172, and more specifically the EDR on its face is unconstitutionally discriminatory to United States citizen voters in low-population counties, and that the application of such legislation dilutes the votes in low-population counties. Defendants have failed to provide any rational basis for the discriminatory legislation or the disparate application of the legislation. In regard to the likelihood of success, Plaintiffs have shown at this initial stage of these proceedings that there is a strong likelihood that they will prevail in this action.

  B. Public Interest

Plaintiffs contend that the public interest supports the entry of a preliminary injunction. The public interest is served by ensuring that all Illinois voters have an equal opportunity to vote in Illinois. The EDR polling place registration option as it now stands gives an unfair advantage to voters in certain counties. While Defendants and the Amicus Briefs provide extensive analysis on the needs of voters in the populous counties in Illinois, Illinois is made up of more than the Chicago metropolitan area and other high population areas. Equality under the law does not end at the city limits. The Constitution guarantees equal voting rights to all United States citizens in Illinois, not simply those in counties that have the highest populations and have organizations such as those represented in the Amicus Briefs to stand up for their enhanced voting rights. Defendants themselves acknowledge that "smaller-population counties" have "more limited resources." (Orr Resp. 7). The ability of United States citizens to vote should not be determined by the level of financial resources of the county in which they reside

Based upon the evidence presented, the harm to Plaintiffs is irreparable in the absence of any alternative remedy. The Amicus Brief by the ACLU Parties has elected to take no position on the merits of Plaintiffs' claim that the current EDR system violates the Equal Protection Clause, but suggests that if this court were to enter injunctive relief, the court should simply grant an injunction that extends EDR to local polling places statewide. (DE 25: 1). While ACLU Parties' suggestion might or might not be an alternative remedy, this court will not legislate as to voters'

12

Case 5:16-cv-00913-D   Document 43-4   Filed 12/03/16   Page 12 of 13

rights. Illinois has acted to institute the legislation for EDR and this court's proper role is to determine whether such legislation and/or implementation of such legislation violates the Constitution. The court also notes that such a step might also impose an untenable financial burden on various counties in the State of Illinois. Defendants argue that a preliminary injunction is an extraordinary remedy. Such a remedy is precisely the relief that is most appropriate in a case such as this where a fundamental right under the Constitution is impacted. Therefore, the public interest factor clearly supports the entry of a preliminary injunction. Based on all of the above, Plaintiffs' motion for a preliminary injunction is granted.

## CONCLUSION

Based on the foregoing analysis, Plaintiffs' motion for a preliminary injunction is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 27, 2016