EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

| | |
|---|---|
| FRANCIS X. DELUCA, | |
| Plaintiff, | |
| v. | |
| NORTH CAROLINA STATE BOARD OF ELECTIONS; KIM WESTBROOK STRACH, in her official capacity as Executive Director of the State Board; and A. GRANT WHITNEY, RHONDA K. AMOROSO, JOSHUA D. MALCOLM, JAMES BAKER, and MAJA KRICKER, in their official capacities as members of the State Board of Elections, | |
| Defendants, | No. 5:16-cv-913 |
| and | |
| LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA, *et al.*, | |
| and | |
| NORTH CAROLINA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, | |
| Defendant-Intervenors, | |

**[PROPOSED] BRIEF *AMICUS CURIAE* OF SENATOR DANIEL BLUE JR., REPRESENTATIVE VERLA INSKO, SENATOR FLOYD MCKISSICK JR., REPRESENTATIVE MARY PRICE TAYLOR HARRISON, REPRESENTATIVE MICHAEL H. WRAY, SENATOR ANGELA R. BRYANT, AND REPRESENTATIVE SUSAN C. FISHER IN SUPPORT OF DEFENDANT-INTERVENORS**

# TABLE OF CONTENTS

INTEREST OF THE *AMICI CURIAE*

SUMMARY OF THE ARGUMENT

ARGUMENT

I.    Legislative intent governs the interpretation of N.C. Gen. Stat. § 163-82.6a

    a.  Amici are among the legislators who enacted N.C. Gen. Stat. § 163-82.6a.

    b.  The statutory language of N.C. Gen. Stat. § 163-82.6a is not ambiguous.

    c.  In the alternative, if the court finds that N.C. Gen. Stat. § 163-82.6a is ambiguous, then the intent of the legislators should control.

II.    The legislators did not intend for N.C. Gen. Stat. § 163-82.6a to bypass voter registration verification

    a.  Subsection (b)(2) creates a higher bar for same-day registrants than normal registrants.

        i.  N.C. Gen. Stat. § 163-82.4 does not require proof of residence.

        ii.  Same-day registrants must produce proof of residence before they are able to vote at one-stop sites.

    b.  Subsection (d) allows for the counting of ballots for same-day registrants.

III.    Subsection (g) of N.C. Gen. Stat. § 163-82.7 creates a process for voting when the verification process is incomplete.

    a.  N.C. Gen. Stat. § 163-82.7 does not require a "full" verification process to be completed before voters can vote.

    b.  Even if a notice is returned to a County Board of Elections as undeliverable after a person has already voted in an election, then the County Board is required to treat the person as a registered voter for that election.

    c.  Waiting to certify election results until after completion of the mail notice verification process of N.C. Gen. Stat. § 163-82.7 unduly delays the certification of election results, and was not the intention of the legislators.

IV.    Enforcing Plaintiff's interpretation of N.C. Gen. Stat. §§ 163-82.6A would retroactively effect voters who registered and voted in reliance on this statute.

    a.  There is a presumption against retroactivity.

    b.  N.C. Gen. Stat. § 163-82.6A was intended to further the policy goal of enhancing civic participation in the elections process.

Case 5:16-cv-00913-D   Document 47-9   Filed 12/05/16   Page 2 of 22

## INTEREST OF THE *AMICI CURIAE*

Amici Senator Daniel Blue Jr., Representative Verla Insko, Senator Floyd McKissick Jr., Representative Mary Price Taylor Harrison, Representative Michael H. Wray, Senator Angela R. Bryant, and Representative Susan C. Fisher are members of the North Carolina General Assembly ("General Assembly") and have been members since at least 2007. In 2007, Senator Blue, Representative Insko, Representative Harrison, Representative Wray, Senator Bryant, and Representative Fisher were among the co-sponsors of House Bill 91 ("HB 91"), which proposed the addition of N.C. Gen. Stat. § 163-82.6A to Article 7A of Chapter 163 of the North Carolina General Statutes. *See* Declarations of Amici; *see also* 91. N.C. H.R. 2007. (N.C. 2007). Section 163-82.6A created in-person registration and voting at one-stop sites throughout North Carolina. *See Id.* On July 12, 2007, HB 91 was ratified by the General Assembly. *See Id.* On July 20, 2007, Session Law 2007-253 ("SL 2007-253") was passed, approving the addition of N.C. Gen. Stat. § 163-82.6A to Article 7A of Chapter 163 of the North Carolina General Statutes. *See* Exhibit A of Declarations of Amici; *see also* 2007 N.C. Sess. Law 253.

## SUMMARY OF THE ARGUMENT

Plaintiff in this case asserts that the same-day registration procedure contemplated in N.C. Gen. Stat. § 163-82.6A does not comply with the voter registration requirements as set forth in § 163-82.7. *See* Dkt. 43 p. 2; *see also* Compl. ¶¶ 24-29. This brief argues that Plaintiff's analysis of these statutes is incorrect and that § 163-82.6A is in fact compatible with § 163-82.7

If a statute is ambiguous, it becomes necessary for parties and the Court to engage in analysis in order to determine its intent. However, if the statutory language is unambiguous, then it would be remiss for a party to mischaracterize the law in order to further his case. In this instance, there is no ambiguity contained within § 163-82.6A. This Section clearly states how

3

voters who register in reliance on the same-registration process outlined in § 163-82.6A must be verified.[1]  *See* N.C. Gen. Stat. § 163-82.6A(d).  Plaintiff mischaracterizes § 163-82.6A by claiming that "applications submitted through the [same-day registration] process are not verified before ballots cast by those applicants are counted."  Compl. ¶ 25.  Such a statement is patently false.  Subsection (d) of § 163-82.6A includes a detailed method of post-registration verification, and additionally, subsection (b)(2) requires that registrants provide proof of residence in order to complete in-person registration and vote at one-stop sites.[2]  *See* N.C. Gen. Stat. § 163-82.6A(b)(2).  Therefore, not only are applications submitted through the same-day registration process verified, voters registering through this process are in fact required to provide additional proof of eligibility than those voters who register through the normal registration process.  *See Id.*

Plaintiff's entire case relies on the idea that every single voter, including same-day registrants, must go through the entirety of the mail notice process contemplated by N.C. Gen. Stat. § 163-82.7 <u>prior</u> to their votes being counted.  *See* Dkt. 43 p. 5 (emphasis added).  He asserts that there is some sort of "verification mandate" with respect to the mail notice process.  *Id.* at p. 8.  Such a "mandate" does not exist anywhere in the statutes.  *See generally* Elections and Election Laws, N.C. Gen. Stat. § 163.  Additionally, the creation of such a "mandate" was never the intention of the Amici legislators when enacting the same-day registration process.

---

[1] "(d) Verification of Registration; Counting of Ballot. – Within two business days of the person's registration under this section, the county board of elections in conjunction with the State Board of Elections shall verify the North Carolina drivers license or Social Security number in accordance with G.S. 163-82.12, update the statewide registration database and search for possible duplicate registrations, and proceed under G.S. 163-82.7 to verify the person's address. The person's vote shall be counted unless the county board determines that the applicant is not qualified to vote in accordance with the provisions of this Chapter."  N.C. Gen. Stat. § 163-82.6A(d).

[2] "To register and vote under this section, the personal shall… (2) Provide proof of residence by presenting any of the following valid documents that show the person's current name and current residence address: a North Carolina drivers license, a photo identification from a government agency, or any of the documents listed in G.S. 163-166.12(a)(2). The State Board of Elections may designate additional documents or methods that suffice and shall prescribe procedures for establishing proof of residence."  N.C. Gen. Stat. § 163-82.6A(b)(2).

4

Plaintiff asserts that it is "temporally-impossible" for same-day registrants to be verified fully through the mail notice process before election results can be certified. *See Id.* p. 5. However, there is no requirement in Chapter 163 that same-day registrants be verified fully through the mail notice process before election results are certified. *See generally* N.C. Gen. Stat. § 163. Further, there is no requirement that all voters must be verified in the exact same manner before election results can be certified and same-day registrants are actually required to show additional proof of eligibility in a way that normal registrants are not. *See infra* note 2.

As the legislators responsible for the creation of the same-day registration process, Amici are uniquely positioned to make unequivocal statements with respect to the legislative intent behind HB 91. House Bill 91 was never intended to bypass voter registration requirements, nor was it intended as some sort of mechanism for enabling ineligible voters to vote. Rather, House Bill 91 was passed because it was a way to encourage civic participation and allow for those people who may have missed normal registration deadlines to have the ability to vote. Recognizing that the right to vote was the most fundamental right of citizenship, Amici proposed and then ratified HB 91 so that an increased number of eligible voters could have the opportunity to exercise this right.

Amici point out that Plaintiff did not object to same-day registration for nine years after SL 2007-253 was passed. Now, nearly a decade after Amici acted to create the same-day registration process, Plaintiff mischaracterizes § 163-82.6A and makes the unsubstantiated claim that voters registering in reliance on this Section are somehow evading requisite verification. Plaintiff emphasizes the timeline of mail verifications in his Complaint, but fails to examine the entirety of § 163-82.6A. For the Court to apply Plaintiff's interpretation and grant his motion, the Court must retroactively affect the votes of thousands of voters who voted in this past

5

election in reliance on § 163-82.6A. Thus, Amici assert in this brief *amicus curiae* that Plaintiff has incorrectly interpreted §§ 163-82.6A and 163-82.7.

## ARGUMENT

### I.     Legislative intent governs the interpretation of N.C. Gen. Stat. § 163-82.6a.

Section 163-82.6A is straightforward and unambiguous. It clearly outlines a procedure by which voters are able to register and vote at one-stop election sites throughout North Carolina. This statute directly addresses voter verification both at the time of registration and post-registration. *See* N.C. Gen. Stat. § 163-82.6A(b)(2) and (d). Therefore, same-day registrants registering under this Section are subject to increased verification as compared to those registrants who register under the normal registration process. Amici do not argue that there is a hidden or additional meaning behind N.C. Gen. Stat. § 163-82.6A, but merely that they, as the legislators responsible for its passage, intended for the statutory language to embody their intent.

There is a "'strong presumption' that the plain language of the statute expresses congressional intent." *Ardestani v. INS*, 502 U.S. 129, 135 (1991) (quoting *Rubin v. United States,* 449 U.S. 424, 430 (1981)). This strong presumption is only rebutted in "'rare and exceptional circumstances,' when contrary legislative intent is clearly expressed." *Id*. (citation omitted). Plaintiff has failed to state any sort of contrary legislative intent, and in fact, Amici, as the legislators responsible for § 163-82.6A, refute the idea that any contrary legislative intent existed. The Supreme Court has stated that "[i]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *See Funbus Systems, Inc. v. California Public Utilities Comm.*, 801 F.2d 1120, 1126 (9th. Cir. 1986) (quoting *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 843 n. 9 (1984)). Thus, the plain language of § 163-82.6A, in conjunction with the

6

assertions of the Amici contained in this brief *amicus curiae,* make it clear that same-day

registrants are subject to verification at the time of their registration and are therefore, not

unverified registrants at the time of the certification of election results.

A. Amici are among the legislators who enacted N.C. Gen. Stat. § 163-82.6a.

Remarks by a legislator, when consistent with statutory language and other legislative

history, can provide evidence of legislative intent. *See Department of Toxic Substances Control

v. Interstate Non-Ferrous Corp.*, 99 F. Supp. 2d 1123, 1135 (E.D. Cal. 2000). Additionally, "an

explanation provided by one of the legislation's sponsors during floor debate 'deserves to be

accorded substantial weight in interpreting the statute.'" *Id.* at 1136 (quoting *Federal Energy

Administration v. Algonquin SNG, Inc.*, 426 U.S. 548, 564 (1976)) (finding that when there was

no committee, House, or Senate floor debate available and the legislative history was

exceedingly sparse, statements by a legislation's sponsor were given greater weight than they

might have been otherwise). In this instance, Amici consist of _____ of the sponsors of HB

91. Statements by Amici regarding the intent behind enacting N.C. Gen. Stat. § 163-82.6A

should accordingly have greater weight than any statutory analysis presented by Plaintiff.

Detailed notes and minutes of legislative debates and committee meetings regarding HB

91 are sparse and limited in detail. In instances in which legislative history was not available,

courts have afforded greater weight to statements made by individual legislators. *See Mount

Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1453 (9th Cir. 1992) (finding that though the

legislative history was exceedingly sparse, it was nonetheless critical to the outcome and

therefore, giving greater weight to statements by individual legislators who spoke on behalf of

the legislation). Amici proffer to the Court in this brief the legislative history behind N.C. Gen.

Stat. § 163-82.6A because such detailed legislative history is simply not available to the Court

7

from any other source. As they make clear in this brief, such legislative history unequivocally supports Amici's interpretation of this statute. When the legislative history is clear, it provides the best insight into the purpose of a statute. *See Id.* at 1456.

B. The statutory language of N.C. Gen. Stat. § 163-82.6a is not ambiguous.

Amici are merely asserting in this brief *amicus curiae* that the language of N.C. Gen. Stat. § 163-82.6A accurately captures their legislative intent at the time that this statute was created. In construing a statute, a court looks at first, the language of the statute itself and second, its legislative history. *See Funbus Systems*, 801 F.2d at 1125-26 (quoting *Brock v. Writers Guild of America, West, Inc.*, 762 F.2d 1349, 1353 (9th Cir. 1985). When looking at the language of the statute, the court focuses first on the statute's plain language. *See Id.* Section 163-82.6A clearly states that a same-day registrant can only vote if proof of residence is shown at the time of registration and that verification of registration is completed by the county boards of election post-registration. *See* N.C. Gen. Stat. § 163-82.6A(b)(2) and (d). The word verification in this Section is not limited to only the mail verification contemplated by § 163-82.7.

"Verification" is not a defined term in Chapter 163. *See generally* N.C. Gen. Stat. § 163. However, a plain and unambiguous meaning can be attributed to the word "verification," which is defined in the dictionary as "the act or process of confirming or checking the accuracy of: the state of being confirmed or having the accuracy of checked." *Verification*, Merriam-Webster (Dec. 3, 2016), https://www.merriam webster.com/dictionary/verification. Within the context of voter registrations in Chapter 163, verification is not intended to be restricted to a mail confirmation process. *See generally* N.C. Gen. Stat. § 163. In fact, Subsection (d) of § 163-82.6A is titled "Verification of Registration; Counting of Ballot," and includes explicitly the

8

verification by the county boards of elections of North Carolina drivers licenses and Social Security numbers in addition to the mail confirmation process of § 163-82.7. *See* N.C. Gen. Stat. § 163-82.6A(d). Further, there is <u>no</u> requirement in Chapter 163 that all voter registrations must be verified via the mail notice process of § 163-82.7 <u>prior</u> to a voter's ability to vote in an election. *See generally* N.C. Gen. Stat. § 163; *see also infra* p. 14.

    C.  <u>In the alternative, if the court finds that N.C. Gen. Stat. § 163-82.6A is ambiguous, then the intent of the legislators should control.</u>

If the Court does find that N.C. Gen. Stat. § 163-82.6A is ambiguous, then the next step would be to consult the legislative history. *See Funbus Systems*, 801 F.2d at 1125-26. The legislative history of a statute can aid in the interpretation of a statute's language and effect. *See Department of Toxic Substances*, 99 F. Supp. 2d at 1135 (E.D. Cal. 2000) (citations omitted). However, the judiciary, as the final authority on issues of statutory construction, must reject constructions which are contrary to clear legislative intent or that frustrate the policy which legislators sought to implement. *See Funbus Systems*, 801 F.2d at 1127 (citing *Chevron*, 467 U.S. at 842-43). It would be naive or disingenuous to suggest that courts should not consider legislative history when attempting to determine the meaning of statutes. *See Mount Graham*, 954 F.2d. at 1453.

Amici, as the legislators, are the best source for discerning the legislative intent behind § 163-82.6A. As there are very few secondary sources from which to research such legislative intent, the Court can only rely on this brief *amicus curiae*. Amici assert that the legislative intent when enacting SL 2007-253 was to expand the ability of North Carolina citizens to exercise their right to vote. In an attempt to encourage civic participation, Amici acted in order to allow an increased number of potential voters to participate in elections. Amici did <u>not</u> intend for same-day registrants who registered under § 163-82.6A to go through the entirety of the mail

verification process of § 163-82.7 <u>prior</u> to the election and no where in § 163-82.6A does it state

such. In fact, recognizing that county boards of elections may not receive all of the

undeliverable mail notices prior to the election, Amici intentionally created a higher bar for

same-day registrants, requiring them to show proof of residence to register and vote.

## II. The legislators did not intend for N.C. Gen. Stat. § 163-82.6a to bypass voter registration verification.

It was not the intention of the legislators for same-day registrants to somehow circumvent

the voter qualification requirements of Chapter 163 of the North Carolina Statutes. As such,

Amici specifically included in N.C. Gen. Stat. § 163-82.6A the requirement that same-day

registrants show proof of residence in order to register and vote. Such a requirement is absent if

a voter registers in the normal process. *See* N.C. Gen. Stat. § 163-82.4. Further, there is no

requirement in Chapter 163 that all voters must register and be verified in an identical manner in

order for their votes to be counted. *See generally* N.C. Gen. Stat. § 163. Amici point out that

there are innumerable reasons for which mail notices sent to eligible voters may be returned to

the county board of elections as undeliverable. It is both impractical and impossible to ensure

that the county boards of elections have completed the mail verification process of § 163-82.7 for

every single voter who votes in the election prior to the certification of election results. If such a

requirement existed, then results would be excessively and unduly delayed and large amounts of

qualified voters may be disenfranchised.

### A. Subsection (b)(2) creates a higher bar for same-day registrants than normal registrants.

#### i. *N.C. Gen. Stat. § 163-82.4 does not require proof of residence.*

N.C. Gen. Stat. § 163-82.6A requires that same-day registrants provide additional

evidence of their eligibility to vote before they can register and vote at one-stop sites. *See* N.C.

10

Gen. Stat. § 163-82.6A(b)(2) (which states that same-day registrants must show proof of residence in order to register and vote).  Voters who register under the normal registration process, however, are not required to show similar proof of residence.  *See* N.C. Gen. Stat. § 163-82.4.  In fact, such voters do not even have to show up in person at any location in order to register, and are able to register merely by the transmitting of a registration application to a county board of elections.  *See* N.C. Gen. Stat. § 163-82.6.  The only information that is requested from an applicant is the following:

(1)     Name,
(2)     Date of birth,
(3)     Residence address,
(4)     County of residence,
(5)     Date of application,
(6)     Gender,
(7)     Race,
(7a)    Ethnicity,
(8)     Political party affiliation, if any, in accordance with subsection (c) of this section,
(9)     Telephone number (to assist the county board of elections in contacting the voter if needed in processing the application),
(10)    Drivers license number or, if the applicant does not have a drivers license number, the last four digits of the applicant's social security number.

N.C. Gen. Stat. § 163-82.4(a).

Upon receipt of an application for registration, a county board of election can proceed under the mail verification process outlined in § 163-82.7.  However, Amici note that there is no requirement that this process must be completed for normal registrants prior to the certification of election results.  *See generally* N.C. Gen. Stat. § 163.

ii.     *Same-day registrants must produce proof of residence before they are able to vote at one-stop sites.*

Amici recognized that addresses for same-day registrants could not be verified in the exact same manner as that which was used for normal registrants prior to the certification of election

11

results. Because of the decreased timeline available for same-day registrants, the receipt of any undeliverable notices prior to county canvasses was an impractical method of verification. For this reason, Amici included subsection (b) in N.C. Gen. Stat. § 163-82.6A, requiring the following for same-day registrants:

> (b) Both Attestation and Proof of Residence Required. – To register and vote under this section, the person shall do both of the following:
>
> (1) Complete a voter registration form as prescribed in G.S. 163-82.4, including the attestation requirement of G.S. 163-82.4(b) that the person meets each eligibility requirement. Such attestation is signed under penalty of a Class I felony under G.S. 163-275(13); and
>
> (2) Provide proof of residence by presenting any of the following valid documents that show the person's current name and current residence address: a North Carolina drivers license, a photo identification from a government agency, or any of the documents listed in G.S. 163-166.12(a)(2). The State Board of Elections may designate additional documents or methods that suffice and shall prescribe procedures for establishing proof of residence.
>
> N.C. Gen. Stat. § 163-82.6A (emphasis added).

 Thus, because same-day registrants are afforded the opportunity to register at a point in time that is so close to the election, they must provide additional proof of their qualifications in a way that is not required of normal registrants. Additionally, Amici never intended for same-day registrants to be verified prior to the election using the exact same procedures utilized for normal registrants. If same-day registrants were required to be verified in the exact same manner as normal registrants prior to the certification of election results, then such additional proof of residence should not be required of them. It would be unfair for same-day registrants to be required to show this additional proof of residence if they were then subject to the exact same method of verification as normal registrants prior to the certification of election results. The

12

verification processes for same-day registrants and normal registrants certainly overlap; however, they should not be construed to be identical.

B. <u>Subsection (d) allows for the counting of ballots for same-day registrants.</u>

Notwithstanding the foregoing, same-day registrants are subject to the mail verification process of N.C. Gen. Stat. § 163-82.7, however, this process does not need to be completed prior to the certification of election results. Section 163-82.7 allows for the mailing of two notices by the county board of elections in order to verify a registrant's address. *See* N.C. Gen. Stat. § 163-82.7(c)-(e). Plaintiff correctly notes that it could take up to thirty days to verify a registrant's address under § 163-82.7. *See* Compl. ¶ 24. However, Plaintiff mischaracterizes the verification that is required in order to count ballots for same-day registrants. *See* Compl. ¶ 27; *see also* Dkt. 43 p. 5. There is no such thing as a "full verification process" contemplated by § 163-82.7 and this phrase is one of the Plaintiff's creation. *See* Compl. ¶ 27. Subsection (d) of § 163-82.6A does require that county boards of elections verify same-day registrants' addresses using the process outlined in § 163-82.7, however, it also states that "[t]he person's vote shall be counted unless the county board determines that the applicant is not qualified to vote in accordance with the provisions of this Chapter." N.C. Gen. Stat. § 163-82.6A. Subsection (d) does <u>not</u> state that a same-day registrant's address must be fully verified under § 163-82.7 <u>prior</u> to their vote being counted. Furthermore, it was not the Amici's intention to require that same-day registrants' addresses be verified via mail notifications prior to their vote being counted. Rather, such a verification process was intended to be used to determine whether or not to remove or retain the same-day registrant on the registration records for future elections.

Case 5:16-cv-00913-D   Document 47-9   Filed 12/05/16   Page 13 of 22

III.    **Subsection (g) of N.C. Gen. Stat. § 163-82.7 creates a process for voting when the verification process is incomplete.**

Plaintiff seems to imply that N.C. Gen. Stat. §§ 163-82.6A and 163-82.7 are somehow incompatible and that it is impossible for the same-day process created by § 163-82.6A to comply with the requirements of § 163-82.7. *See generally* Compl; *see also* Dkt. 43 p. 2. Additionally, Plaintiff creates this requirement of a "full verification process" that is found no where in the statutes. *See Compl.* at ¶ 27. He selectively and exclusively focuses on the mail verification process of § 163-82.7, suggesting that such a process is the only means of verification allowed by Chapter 163. *See generally Compl.*, *see also generally* Dkt. 43. Amici certainly did not intend for same-day registrants to be subject to such a "full verification process" before their votes could be counted.

A.   N.C. Gen. Stat. § 163-82.7 does not require a "full" verification process to be completed before voters can vote.

Pursuant to N.C. Gen. Stat. § 163-82.7(g), voters are permitted to vote even is the verification process is incomplete. Subsection (g) states in part:

> (g) Voting When Verification Process Is Incomplete. - In cases where an election occurs before the process of verification outlined in this section has had time to be completed, the county board of elections shall be guided by the following rules…

> (2) If the Postal Service has returned as undeliverable a notice sent within 25 days before the election to the applicant under subsection (c) of this section, then the applicant may vote only in person in that first election and may not vote by absentee ballot except in person under G.S. 163-227.2. The county board of elections shall establish a procedure at the voting site for:

> a. Obtaining the correct address of any person described in this subdivision who appears to vote in person; and

> b. Assuring that the person votes in the proper place and in the proper contests.

14

If a notice mailed under subsection (c) or subsection (e) of this section is returned as undeliverable after a person has already voted by absentee ballot, then that person's ballot may be challenged in accordance with G.S. 163-89.

(3) If a notice sent pursuant to subsection (c) or (e) of this section is returned by the Postal Service as undeliverable after a person has already voted in an election, then the county board shall treat the person as a registered voter but shall send a confirmation mailing pursuant to G.S. 163-82.14(d)(2) and remove or retain the person on the registration records in accordance with that subdivision.

N.C. Gen. Stat. § 163-82.7(g) (emphasis added).

Thus, there is no requirement that voters must have completed and met all of the mail verification requirements of § 163-82.7 in order to vote in an election or even prior to the certification of election results. Section 163-82.7 specifically contemplates that voters may vote even if mail notifications have been sent back to the board as undeliverable. *See Id.* at (2). This language is intended to reflect the reality that the voter verification process is imperfect and that strict adherence to the mail verification required in § 163-82.7 has the potential to disenfranchise eligible voters.

B. Even if a notice is returned to a County Board of Elections as undeliverable after a person has already voted in an election, then the County Board is required to treat the person as a registered voter for that election.

Section § 163-82.7(g)(3) clearly states that even if a notice is returned to a county board of elections as undeliverable after a person has already voted, then that person is to be treated as a registered voter. Thus, votes of same-day registrants should not be held until the mail verification process is completed because the return of undeliverable notices does not bar a voter from voting. To remove the votes of same-day registrant ballots simply because mail confirmations have been returned as undeliverable would be to hold same-day registrants to a stricter standard than normal registrants.

15

When Amici enacted § 163-82.6A, Amici recognized that the existence of § 163-82.7(g)(3) would still allow for voters to vote even if the mail verification process was not complete at the time of the election or even at the time of the certification of election results. Thus, they intended for same-day registrants whose addresses had not been verified via the mail notification process to still have the ability to vote in that election. Such an intention is obvious, not only because Amici as the legislators assert that this was their intention, but because it is plainly evident that county boards of elections would not have the ability to complete the mail verification process for same-day registrants prior to the election. Further, because county boards may not have the ability to complete the mail notice process for a large number of same-day registrants prior to the county canvasses, Amici created the additional requirement that same-day registrants show proof of residence in order to register and vote. It was the intention of Amici that Subsection (g)(3) be applicable for most same-day registrants and that any mail notices returned as undeliverable after a same-day registrant had already voted be utilized in order to "remove or retain the person on the registration record." N.C. Gen. Stat. § 163-82.7(g)(3).

C. Waiting to certify election results until after completion of the mail notice verification process of N.C. Gen. Stat. § 163-82.7 unduly delays the certification of election results, and was not the intention of the legislators.

Plaintiff correctly points out that it is "temporally impossible" for the mail verification process contemplated by N.C. Gen. Stat. § 163-82.7 to be completed for same-day registrants prior to the certification of election results. *See* Dkt. 43 p. 5. Amici also recognized such a "temporal" impossibility when drafting the same-day registration process in § 163-82.6A. Plaintiff implies that Amici failed to recognize such an impossibility, as the same-day registration process "[does] not mesh with the verification mandate by the date of the normally-

16

scheduled State Board canvass and certification of the election." *Id.* at p. 2. However, Plaintiff fails to give credit to the legislators who drafted § 163-82.6A. Amici did not somehow overlook the mail verification process of § 163-82.7 when drafting the same-day registration statute. Rather, Amici never intended for all same-day registrants to be verified under that process prior to the certification of election results. Such an interpretation is the only logical conclusion. Same-day registration is inherently a much shortened process than normal registration. If same-day registrants were intended to be verified through the mail notice process prior to the county canvasses, then the certification of election results would be excessively delayed. Plaintiff asks the Court to ignore the most logical statutory interpretation and assume instead that the legislators simply overlooked this purported inconsistency. In order for the Court to accept Plaintiff's interpretation, the Court must assume that the same-day registration statute is inherently flawed and ignore the assertions of the Amici legislators regarding their legislative intent.

## IV. Enforcing Plaintiff's interpretation of N.C. Gen. Stat. §§ 163-82.6A would retroactively effect voters who registered and voted in reliance on this statute.

Plaintiff makes the outrageous demand that ballots cast by same-day registrants who "failed" the mail verification process of N.C. Gen. Stat. § 163-82.7 be removed from the final vote count. Compl. Prayer for Relief ¶ 3. Not only does this have the potential to disenfranchise innumerable voters, it holds same-day registrants to a much stricter standard than normal registrants. *See* N.C. Gen. Stat. § 163-82.7(g)(3). Such an action would retroactively harm countless same-day registrants.

### A. There is a presumption against retroactivity.

The Supreme Court has stated that there is a presumption against retroactive application of a statute. *See Landgraf v. Usi Film Prods.*, 511 U.S. 244, 286 (1994). Such a presumption is

17

"founded upon sound considerations of general policy and practice, and accords with long held and widely shared expectations about the usual operation of legislation." *Id.* Thus, even if the Court were to find that same-day registrants must complete the entirety of the mail notice process contemplated in N.C. Gen. Stat. § 163-82.7 before their votes could be counted, such a decision should not affect those same-day registrants who already voted.

Amici assert that their intention was for all same-day registrants who met the requirements of § 163-82.6A at the time of their registration to have their votes counted in that election. *See* N.C. Gen. Stat. § 163-82.6A(d) (which states that a same-day registrant's vote "shall be counted unless the county board determines that the applicant is not qualified to vote in accordance with the provisions of this Chapter"). They note that there is no statutory language in § 163-82.6A that states anything else to the contrary.

There is a strong presumption against statutory retroactivity and a statute does not apply retroactively unless the legislature clearly and explicitly expressed an intent that it do so. *See Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 171 (4th Cir. 2010). The Fourth Circuit has stated that courts assume that statutes "do not operate retroactively" and that it is "'[a]mong the most venerable of the[ ] [judicial] default rules.'" *See Id.* at 173 (quoting *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 946 (1997)). Overriding the Amici's clear assertion of legislative intent would require that the Court retroactively apply a wholly different interpretation of the statute to voters who already voted in this previous election. Not only would this go against the strong presumption against retroactive application, it would affect the most fundamental right of voting. Even if retroactive application would vindicate the purpose of the statute more fully, this consideration is not sufficient to rebut against retroactivity. *See Landgraf*, 511 U.S. at 285-86.

**B. N.C. Gen. Stat. § 163-82.6A was intended to further the policy goal of enhancing civic participation in the elections process.**

Amici legislators did not have some sort of insidious goal nor did they somehow overlook a purported gap in logic when enacting SL 2007-253. Amici simply intended to accomplish the policy goal of increased civic participation in North Carolina elections. Recognizing that numerous eligible voters failed to register before the normal registration deadline, Amici created a mechanism by which such voters could register at a time much later than the normal registration deadline and vote in the election. Amici never intended to create a loophole for ineligible voters to register and vote and in fact, created a higher bar for same-day registrants than normal registrants.

It is not the role of judges to impose their personal policy preferences when reconciling competing political interests. *See Chevron*, 467 U.S. at 865. "The responsibility for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones: Our Constitution vests such responsibility in the political branches." *Id.* If legislative intent is clear, then "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. There can be no clearer manifestation of legislative intent in this case other than this brief *amicus curiae* by the very legislators who sponsored and enacted the same-day registration statute. To grant Plaintiff's motion, and thereby force same-day registrants to go through the full mail verification process before the certification of election results, would frustrate the policy goals of the legislature, and would ultimately cause the potential disenfranchisement of those very voters who were intended to be helped by the statute.

19

## **CONCLUSION**

The Court should deny Plaintiff's motion for declaratory and injunctive relief.

Respectfully submitted this the 5th day of December, 2016.

<div style="margin-left: 50%;">

WALLACE & NORDAN, L.L.P.

/s/ John R. Wallace
John R. Wallace
N.C. Bar No. 7374
Post Office Box 12065
Raleigh, North Carolina 27605
(919) 782-9322 – telephone
(919) 782-8113 – facsimile

*Attorney for Proposed Amici*

</div>

20

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on this day I filed the foregoing Motion to Intervene as Defendants with the clerk's office via the CM/ECF system, which will send notification of filing to the following counsel of record:

Karl S. Bowers, Jr.
P.O. Box 50549
Columbia, SC 29250
Telephone: 803-260-4124
butch@butchbowers.com

Joshua Brian Howard
Gammon, Howard & Zeszotarski PLLC
115 ½ West Morgan Street
Raleigh, NC 27601
Telephone: 919-521-5878
jhoward@ghz-law.com

Alexander M. Peters
James Bernier
Office of the Attorney General
P.O. Box 629
Raleigh, NC 27602
Telephone: 919-716-6913
apeters@ncdoj.gov
jbernier@ncdoj.gov

Joshua Lawson
Katelyn Love
General Counsel
North Carolina State Board of Elections
441 N. Harrington St.
Raleigh, NC 27603
Telephone: 919-715-9194
joshua.lawson@ncsbe.gov

Anita S. Earls
Allison J. Riggs
Emily E. Seawell
Southern Coalition for Social Justice
1415 W. Highway 54, Suite 101
Durham, NC 27707
Phone: 919-323-3380
Facsimile: 919-323-3942

Caitlin Anne Swain-McSurely
400 W. Main Street, Suite 203
Durham, NC 27701

Irving L. Joyner
P.O. Box 374
Cary, NC 27512
Telephone: (919) 319-8353
Fax: (919) 530-6339
Email: ijoyner@nccu.edu

Martha A. Geer
COHEN MILSTEIN SELLERS & TOLL PLLC
150 Fayetteville St., Suite 980
Raleigh, NC 27601
Telephone: (919) 890-0560
Facsimile: (919) 890-0567
Email: mgeer@cohenmilstein.com

Penda D. Hair
Leah J. Kang
FORWARD JUSTICE
1401 New York Avenue, Suite 1225
Washington, DC 20005
Telephone: (202) 256-1976

This the 5th day of December, 2016.

/s/ John R. Wallace
John R. Wallace

*Attorney for Proposed Amici*

22